[Civ. No. 11652. First Dist., Div. One. Dec. 11, 1941.]

MARION LLOYD, Respondent, v. H. J. KLEEFISCH, as Administrator With the Will Annexed, etc., Appellant.

Zimdars & Warren for Appellant.

W. P. Caubu for Respondent.

PETERS, P. J.—Plaintiff, after her claim therefor had been rejected, brought this action against defendant as administrator with the will annexed of the estate of Manley B. Haskell to recover the sum of $22,770, alleged to be the reasonable value of services rendered by plaintiff to the deceased at his special instance and request. It is alleged in the complaint that the services described therein ''were ren-

dered during all of said time by said plaintiff with the understanding, expectation and agreement between said plaintiff and said Manley B. Haskell that said Manley B. Haskell would compensate said plaintiff for said services in money to and in the amount of the reasonable value thereof upon the termination of said services, at or before the death of said decedent.'' Plaintiff also alleges that she has not been paid. The services, according to the complaint, were rendered from July 22, 1929, to January 1, 1935, and from July 1, 1935, to October 22, 1939, the last date being the day upon which decedent died. The answer denied the material allegations of the complaint; alleged that any services rendered by the plaintiff to decedent were fully paid for by decedent; that the alleged contract was barred by the statute of frauds and by the statute of limitations. On these issues the cause proceeded to trial before a jury. The jury brought in a verdict for plaintiff in the sum of $10,000. From a judgment based on that verdict defendant prosecutes this appeal.

Appellant urges that the evidence is insufficient to sustain either the implied finding of the jury that a contract existed, or the implied finding that under any such contract the services were not to be paid for until termination of the services. After reading the record we are of the opinion that, so far as the sufficiency of the evidence is concerned, this is a typical fact case. Had the jury brought in a verdict in favor of appellant there is ample evidence and inferences therefrom that would have supported such a verdict. But there is also ample evidence with inferences therefrom to support the contrary verdict. Under such circumstances, this court has no power to interfere with the judgment.

Disregarding conflicts in the evidence, and indulging in all reasonable inferences to support the judgment, the record shows the following: In 1929 Manley B. Haskell was seventy-eight years of age. He was a man of some means, with property holdings in Illinois. He lived at a hotel in San Francisco. He had suffered for many years from a stomach ailment, and at times was apt to be cross and irritable. His daughter lived in the southern part of this state and her health was such that she could not travel. Haskell had no other relatives in this part of the state. Starting in July of 1929 the plaintiff, then Mrs. Teltz, began to render many services for him. Appellant's witnesses, as

well as those of respondent, testified at length concerning the extent and nature of these services. No useful purpose would be served by recounting them in detail in this opinion. Suffice it to say that the respondent acted as a companion; took care of his clothes and linen; acted as his chauffeur; cooked and provided special foods; acted as his secretary; acted as his nurse during his illnesses; supervised his dinner parties, and generally performed those personal services requested by him. For the two or three years prior to Haskell's death respondent visited Haskell daily and spent more and more time with him. During his last illness respondent stayed at the hospital and Haskell would accept food from none but her. During the hotel strike Haskell left the hotel where he was living, and, for several months, lived with respondent and her husband. On another occasion when he was ill he left the hotel in order to live with, and be cared for by, respondent.

Under the provisions of § 1880, subd. 3 of the Code of Civil Procedure, respondent could not testify as to the arrangement, if any, under which these varied services were rendered, but she produced several witnesses who testified that Haskell told them that, ''I have promised her that if she will take care of me as long as I live I will see that she is taken care of''; that he had promised respondent that he would take care of the mortgage on her home; that he had stated, ''I will see that she is well taken care of''; that he would provide for her; that Marion (respondent) did not have to worry, that he would take care of her; that he would remember her. To many people he expressed his gratitude towards respondent for the services rendered by her. That it is a reasonable inference from the record that these services were not intended to be gratuitous is so apparent that appellant states in his reply brief that:

''Appellant has tried to be fair and considerate with plaintiff, and, even now, in a spirit of utmost fairness and liberality and to adjust this matter, would consent to a judgment in respondent's favor for a liberal allowance for the last two years prior to decedent's death, as to which the presumption of payment raised by the statute of limitations would not apply.''

There can be no doubt that the evidence offered and the reasonable inferences therefrom support the implied finding

of the jury that these services were rendered with the expectation and understanding that they would be paid for. In a case closely parallel to the instant one on its facts, the court in *Seib* v. *Mitchell,* 10 Cal. App. (2d) 91 [52 Pac. (2d) 281], at p. 94, stated: ''An express contract need not necessarily be proved but 'it is sufficient if from the facts and circumstances it reasonably can be inferred that compensation was in the view and contemplation of the parties.' (*Mayborne* v. *Citizens Trust & Sav. Bank* [46 Cal. App. 178] (188 Pac. 1034), *supra.*) 'When services are rendered by one person, from which another derives a benefit, although there is no express contract or agreement to pay for the services, there is a ''presumption of law'' which arises from the proof of services rendered, that the person enjoying the benefit of the same is bound to pay what they are reasonably worth.' (*Moulin* v. *Columbet,* 22 Cal. 508, 509.)''

It is also urged that the cause of action pleaded is barred by the statute of limitations, with the exception of that part of the claim which arose during the last two years preceding the death of Haskell, and that there was no evidence that the decedent promised to pay upon his death. This is not the first time such a contention has been made in similar cases. The law is well-settled that when services are rendered by one person to another who is not related to him, and such services are accepted by that person, the law not only implies a promise to pay for the services, but implies that such promise is to be performed at the termination of the services. The rule is clearly stated in *Lauritsen* v. *Goldsmith,* 99 Cal. App. 671, 675 [279 Pac. 168], as follows:

''It is also contended by respondents that a cause of action upon *quantum meruit* would be barred by the statute of limitations with the exception of that part of the claim which arose during the last two years preceding the death of decedent. It has been held, however, under facts similar to those in this case that the law not only implies a promise to pay but implies the promise to pay at the termination of the services, so that the cause of action does not arise until the day of the death of decedent and the statute of limitations does not bar any part of the period of continuous services. (*Hagan* v. *McNary,* 170 Cal. 141 [L. R. A. 1915E, 562, 148

Pac. 937]; *Mayborne* v. *Citizens T. & S. Bank, supra; Warder* v. *Hutchinson,* [69 Cal. App. 291 (231 Pac. 563)], *supra.*)''

There are many cases supporting the rule that where there is an express or implied promise to pay on the termination of the services the statute of limitations does not start to run until the termination of the services—in the instant case upon the death of Haskell. (*Long* v. *Rumsey,* 12 Cal. (2d) 334 [84 Pac. (2d) 146]; *Burr* v. *Floyd,* 137 Cal. App. 692 [31 Pac. (2d) 402]; *Wax* v. *Adair,* 16 Cal. App. (2d) 393 [60 Pac. (2d) 904].)

Appellant urges, however, that the services were not here continuous—that, according to the pleadings and to the admitted facts, there was a break in the services in the first six months of 1935 during which no services at all were rendered by respondent. It is urged, therefore, that the statute of limitations at least bars any claim for services rendered prior to 1935. The facts surrounding this temporary cessation of the services were that when respondent first started to perform services for Haskell she was married to a man by the name of Teltz. She divorced Teltz in 1933 and on December 31, 1934, she married Wyn Harold Lloyd. Haskell opposed her marriage to Lloyd and for the first six months of 1935 he refused to have respondent perform any services for him. The evidence shows that during this period respondent was willing and able to continue the performance of the services and that in July of 1935 Haskell asked her to continue with the services. The trial court submitted to the jury the question as to whether the temporary cessation of the services was without fault on the part of the respondent and further instructed that, ''if you find that the cessation was caused by a wrongful temporary discharge by Mr. Haskell, and if you find that he requested a resumption of such services and the plaintiff complied with his request, then I instruct you that this temporary cessation in rendering services by her did not break the terms of her expectation and their understanding, if any, and her services are to be taken as having been continuously rendered.'' These instructions embody a complete and correct statement of the law. Where a person is to render services and is to be paid upon the death of the person benefited, cessations in service caused by the ca-

pricious or wrongful act of the person obligated to pay do not operate to prevent the contract from being a continuous one within the rule that the statute of limitations starts to run from the date of termination. This was one of the points decided in *Seib* v. *Mitchell, supra,* where, at p. 94, it is stated:

"Defendant contends that the larger part of the sum claimed is barred by the statute of limitations, basing this contention upon the finding of the court that during part of the time plaintiffs did not render services and that 'such cessation of services was without fault of the plaintiff and was caused by the wrongful temporary discharge by the deceased'. This contention cannot be upheld. The contract was for continuous services from 1917 until the death of Mrs. Herbst. The court found that plaintiffs were at all times ready, able and willing to perform the services. The finding of 'the wrongful temporary discharge' was tantamount to a holding that deceased during the periods of cessation of services did not desire the assistance of plaintiffs, especially in view of the fact that after each cessation of services plaintiffs were again requested by deceased to resume their ministrations to her and they did in fact on each occasion render further services. The statute of limitations did not begin to run until the death of Mrs. Herbst." (See, also, *Burr* v. *Floyd, supra.*)

Appellant likewise urges that the alleged contract is invalid under the statute of frauds. (Civ. Code, § 1624, subds. 1 and 6.) The complete answer to this contention is to be found in *Mayborne* v. *Citizens T. & S. Bank,* 46 Cal. App. 178 [188 Pac. 1034], at p. 189, as follows:

"We think there is no more merit in the contention that the contract herein was invalid by reason of subdivision 1 of section 1624 of the Civil Code, which requires 'an agreement that by its terms is not to be performed within a year from the making thereof to be evidenced by writing, subscribed by the party to be charged'. This rule does not apply to contracts, either express or implied, for the rendition of services for an indefinite period of time and payment to be made at the termination of the relationship. (*Dougherty* v. *Rosenburg,* 62 Cal. 32; *Kutz* v. *Fleisher,* 67 Cal. 93, [7 Pac. 195]; *Osment* v. *McElrath,* 68 Cal. 466, [58 Am. Rep. 17, 9 Pac. 731]; *Raynor* v. *Drew,* 72 Cal. 307, [13 Pac. 866]; *Bank of Orland* v. *Finnell,* 133 Cal. 475,

[65 Pac. 976]; *Stewart* v. *Smith,* 6 Cal. App. 152, [91 Pac. 667].) To fall within the condemnation of the statute the contract must be such as to be incapable of performance within one year. Manifestly, we have no such situation here.

"Indeed, the proper view of this case, as we understand it, is that the services were performed without any express agreement as to compensation, but with the expectation and understanding that at some time in the future, probably on the death of Mr. Dutton, the plaintiff would be paid the reasonable value of her services.

"Nor do we think that subdivision 7 [now subdivision 6] of said section, requiring a writing for the validity of an agreement 'which by its terms is not to be performed during the lifetime of the promisor, or an agreement to devise or bequeath any property or to make any provision for any person by will,' applies to a case like this for recovery upon a *quantum meruit.*"

The next contentions of appellant center around the question of whether the services here involved were paid for by Haskell prior to his death. Appellants call attention to evidence produced by them that Haskell, in 1929, loaned Mr. Teltz, then married to respondent, some money to use in his business, and that Teltz subsequently became bankrupt, resulting in a loss to Haskell of $12,500. There was no evidence that this was other than a business transaction between Haskell and Teltz, and certainly there is no evidence that this money was loaned on condition that respondent would render services to Haskell, or that the services subsequently rendered were intended by either Haskell or respondent as repayment of that debt. There was also evidence that Haskell, when he lived with respondent and her husband during the hotel strike and during one of his illnesses, paid respondent for his room and board. Payments were also made to her for the room and board of a relative of Haskell's. Appellant also produced in evidence the divorce complaints in *Teltz* v. *Teltz* and *Lloyd* v. *Lloyd,* in neither of which did respondent list her rights under the contract with Haskell as community property. While this evidence offers some support to respondent's contention that the services rendered may have been paid for by Haskell, they do not conclusively establish that fact if the burden of proof to show payment was on appellant. Ap-

pellant recognizes this fact, and urges that since nonpayment must be pleaded by a plaintiff in a case like this, and was in fact pleaded by plaintiff, the burden of proof on the issue rests on the plaintiff. The trial court instructed that the burden of proving payment rested on defendant under the affirmative allegations of his answer. In our opinion, that was a correct statement of the law. While it is essential for a plaintiff in an action against an administrator for services rendered to plead nonpayment, the cases are clear to the effect that this negative averment need not be proved by the plaintiff, and that the burden of proof to show payment rests on defendant. In *Hurley* v. *Ryan*, 137 Cal. 461, the action was against an administrator for services rendered a decedent. The complaint properly averred nonpayment. The defendant denied this allegation, and, as did appellant in the instant case, averred payment. On defendant's appeal it was urged there was no evidence of nonpayment. In disposing of this contention the court stated (p. 462):

"The principle was clearly stated and fully considered in *Melone* v. *Ruffino*, 129 Cal. 514 [62 Pac. 93, 79 Am. St. Rep. 127], that 'where the plaintiff has proved the existence of a debt sued on,—at least within the period of statutory limitation,—the burden of proving payment is on the defendant.' It was also held that the averment of nonpayment, while 'necessary to make the complaint perfect upon its face,' need not be proved by plaintiff. 'The question,' it was said, 'is not one of pleading, but of evidence; not what must be alleged, but where the burden of proof lies.' In cases of actions on claims against an estate the rule may sometimes place the administrator at a disadvantage. But this disadvantage is about equally balanced by the provisions of section 1880 of the Code of Civil Procedure, which disqualifies parties and assignors of parties to an action as witnesses, upon a claim or demand against the estate of a deceased person 'as to any matter of fact occurring before the death of such deceased person.' " (See, also, *Stuart* v. *Lord*, 138 Cal. 672 [72 Pac. 142]; *McKay* v. *McKay*, 184 Cal. 742 [195 Pac. 385]; *San Pedro Lumber Co.* v. *Kreis*, 111 Cal. App. 466 [295 Pac. 890]; *Dickey* v. *Kuhn*, 106 Cal. App. 300 [289 Pac. 242]; *Wakeman* v. *Green*, 98 Cal. App. 50 [276 Pac. 387]; *Atkinson* v. *Adkins*, 92 Cal. App. 424 [268 Pac. 461].)

Appellant also complains of the refusal of the trial court to submit certain special interrogatories to the jury on several of the issues. Appellant requested that the jury specially find the exact terms of the agreement between Haskell and respondent; the reasonable value of the services from July 22, 1929, to March 22, 1932; from March 22, 1932, to December 31, 1934; from July 1, 1935, to October 22, 1939, and several other matters. If special interrogatories were required as a matter of law in the instant case, in nearly every jury case the litigants would be entitled to special interrogatories on every issue presented. That is not the law. The submission of special interrogatories to the jury, except in certain limited cases, of which this is not one, is discretionary with the trial court, and such discretion will not be interfered with unless an abuse is shown (§ 625, Code of Civ. Proc.; 24 Cal. Jur., p. 904, § 155). No abuse of discretion appears in the present case.

Certain objections to the instructions given and refused are made. Most of the refused instructions contain incorrect statements of the law. We have examined the charge. It was full, fair, complete and correct.

The judgment appealed from is affirmed.

Knight, J., and Ward, J., concurred.