[Civ. No. 7005.  Third Dist.  Mar. 30, 1944.]

W. H. WESCOATT, Appellant, v. W. J. MEEKER, as Administrator, etc., Respondent.

DeMeo & DeMeo, Charles DeMeo and J. N. DeMeo for Appellant.

Barrett & McConnell and A. Dal Thomson for Respondent.

SCHOTTKY, J. pro tem.—Plaintiff and appellant filed an action against defendant and respondent administrator after the rejection of his verified claim which read in part as follows:

"Claimant rendered services and performed labor for and at the request of Effie M. Meeker from December, 1911, to the time of her death, which services and labor consisted of general farm and dairy work, the repairing and maintenance of improvements, the cutting and sale of wood and the making and sale of split timber, the supervision and management of farm, dairy, and business properties, and said services and labor were performed with the understanding and agreement between said Effie M. Meeker and claimant that said Effie M. Meeker would compensate claimant to the amount of the reasonable value thereof upon the termination of said labor and services at or before her death, and that the reasonable value of said labor and services, in addition to board and lodging furnished claimant by decedent is the sum of $20,640.00."

Respondent administrator in his answer denied the allegations of said claim and also set up the defense that each of

the four causes of action based upon the claim was barred by subdivision 1 of section 339 of the Code of Civil Procedure.

After a trial before the court without a jury the court found that the decedent Effie M. Meeker was not indebted to appellant, that appellant's action was barred by subdivision 1 of section 339 of the Code of Civil Procedure and "that the plaintiff rendered services and performed labor for said decedent Effie M. Meeker, also known as Effie Meeker, continuously, from December, 1911, to about two years before the death of said decedent and intermittently thereafter to the date of her death, as aforesaid, except for periods of two (2) or three (3) weeks each year, up to the year 1938, and for periods of two (2) to four (4) months annually during the years 1938, 1939 and 1940, which said services and labor consisted of general farm and dairy work, the repairing and maintenance of improvements, the cutting and sale of wood, and the making and sale of split timber, the supervision and management of farm, dairy, and business properties, and miscellaneous other services and labor, but that it is not true that said services and labor, or any part thereof, were performed by plaintiff during any of said times with the understanding or agreement between said decedent and plaintiff that said decedent would compensate plaintiff the reasonable value thereof, or otherwise, upon the termination of said services at or before her death; that said services were not terminated before the death of said decedent, save and except that all services in connection with dairy work and the supervision of said decedent's dairy property were terminated in the year 1938 or 1939 and more than two years prior to the death of said decedent on July 31, 1940; that it is not true that the reasonable value of said labor and services, in addition to board and lodging furnished plaintiff by decedent, is the sum of $20,640, or any sum whatever, and in this connection the Court further finds that the value of all labor and services performed by plaintiff for decedent during the period of two years next before her death, as aforesaid, did not exceed in value the board and lodging furnished to plaintiff by decedent during said period of two years."

Judgment in favor of respondent was entered in accordance with the findings, and this appeal is from said judgment.

Appellant makes a forceful attack upon the findings and the judgment and contends that they are without support in the evidence. We believe that what was said in *Lloyd* v.

*Kleefisch,* 48 Cal.App.2d 408, at page 410 [120 P.2d 97], is quite applicable to the instant case:

"After reading the record we are of the opinion that, so far as the sufficiency of the evidence is concerned, this is a typical fact case. Had the jury brought in a verdict in favor of appellant there is ample evidence and inferences therefrom that would have supported such a verdict. But there is also ample evidence with inferences therefrom to support the contrary verdict. Under such circumstances, this court has no power to interfere with the judgment.''

Disregarding all conflicts in the evidence and indulging in all reasonable inferences to support the judgment, the record shows the following facts, which are set forth in the opinion of the trial court:

"The evidence discloses that decedent Effie Meeker was, to put it mildly, an eccentric individual who elected to live on a ranch in western Sonoma County separate and apart from other members of her family. About the year 1911 or 1912 plaintiff took up his abode upon this ranch and remained thereon except as hereinafter noted until Effie Meeker's death. From that time on plaintiff performed the usual duties on the place which the character of the property demanded; milked the cows, built fences, split and hauled posts, delivered the cream to the creamery and such other labor as was required and necessary. During the period from 1914, or early in 1915 to 1938, the herd of cows was built up from a herd of converted beef cows to a good milk herd. During the same period Effie Meeker accumulated upon the ranch a band of some forty to fifty dogs, to which she fed the skimmed milk. Eventually the herd of cows became seriously infected with T. B. and abortion and most of it was sold, after which the herd was never again built up. It likewise appears that from 1921 to 1930 and despite the quality of the herd upon the ranch and the probable good income therefrom—based upon general dairying conditions in this section during that period—Effie Meeker was becoming financially involved. In May of 1930 her account for dairy feed with the McNear Co. had reached the sum of $2,877.14 and an action to recover this sum was commenced against Effie Meeker and plaintiff herein as 'Co-partners doing business under the name and style of Meeker and Wescoatt.' Subsequently, this action was dismissed and settled by Effie Meeker executing

to McNear Co. a note secured by chattel mortgage. Effie Meeker refused to permit plaintiff to execute the mortgage or any other paper with her for the reason as stated by her, 'He was not her partner.' The McNear Co., however, took a chattel mortgage independently from Wescoatt 'to cover any possible interest he might have in the herd.' In 1934 the note and chattel mortgages were renewed by Effie Meeker and also by plaintiff separately as before, but thereafter Effie Meeker further secured the constantly growing debt by executing a mortgage upon her real estate as well as a chattel mortgage, and plaintiff thereupon was not requested to execute a chattel mortgage in renewal of the chattel mortgage previously executed by him. At the time of her death Effie Meeker's indebtedness to the McNear Co. had reached the principal sum of about $6,500.00.

"It appears from the evidence that at one period subsequent to when plaintiff went upon the Effie Meeker ranch, Effie Meeker expressed upon more than one occasion to third parties an intent to 'take care of Wescoatt' by her will; that she and plaintiff may have agreed that the survivor should be the recipient of the other's bounty by a proper provision in the will of each to that effect. Upon the death of Effie Meeker plaintiff and Mrs. Addie Feige, a neighbor, looked through decedent's effects for the purpose of discovering a possible will, but none was found other than an olographic will of plaintiff, dated December 30, 1924, wherein Effie Meeker was designated as plaintiff's sole beneficiary. It further appears, however, that although Effie Meeker may have once entertained the thought of naming plaintiff as her sole heir, or as a beneficiary, she abandoned that idea quite some time before her death for upon several occasions in recent years she expressed her antipathy to wills; that she didn't believe in them; that 'they just break them.' During the last eight to ten years Effie Meeker was in a straitened financial condition due in part at least to the diversion of a considerable portion of her income to a mining venture in which plaintiff and, perhaps, Effie Meeker herself were interested. Be that as it may, the evidence discloses that in the last eight to ten years of her life the relations of plaintiff and Effie Meeker became definitely strained over financial matters. During this period plaintiff would leave the ranch for the mine for periods estimated at from thirty days to two or three months and would then return to the ranch for short periods and then depart for the mine again. . . .

"The evidence shows that plaintiff rendered services upon the Meeker property from 1911 or '12 up to 1940. These services were apparently continuous, at least up to the last few years of Effie Meeker's life, and until plaintiff commenced the pursuit of the mining venture mentioned by several witnesses. It clearly appears, however, that the actual relations between plaintiff and Effie Meeker during the later years were such as to wholly overcome the presumption that he was to be compensated therefor upon the death of Effie Meeker. On the contrary, the evidence convinces that during this period Effie Meeker was looking to plaintiff to repay to her advances she claimed to have made to him so that she would be relieved of her apparently pressing financial worry. And according to one witness plaintiff had said he would try and promised to make such repayment 'if he got his mine to pay.' It further appears from the evidence that during at least the past eight years of Effie Meeker's life she and plaintiff were constantly quarreling over financial matters. The testimony concerning these quarrels over money and debts indicates that Effie Meeker was the more active party in them; that she was not only expecting, but demanding that plaintiff do something about the pressing obligations, which demand on her part is wholly unreconcilable with plaintiff's present contention that she was his debtor. It seems clear that from the very nature of the repeated demands of Effie Meeker upon him plaintiff was necessarily put on notice for quite some time before her death that Effie Meeker not only disclaimed any financial obligation toward plaintiff, but on the contrary claimed the right to be recompensed for the advances she had made to him.''

█ Generally speaking, the law applicable to the facts of the instant case is found in *Lloyd* v. *Kleefisch, supra,* at page 412, which case states:

"In a case closely parallel to the instant one on its facts, the court in *Seib* v. *Mitchell,* 10 Cal.App.2d 91 [52 P.2d 281], at p. 94, stated: 'An express contract need not necessarily be proved but "it is sufficient if from the facts and circumstances it reasonably can be inferred that compensation was in the view and contemplation of the parties." (*Mayborne* v. *Citizens Trust & Sav. Bank* [46 Cal.App. 178] (188 P. 1034), *supra.*) "When services are rendered by one person, from which another derives a benefit, although there is no express contract or agreement to pay for the services, there is a 'presumption of law' which arises from the proof of services

rendered, that the person enjoying the benefit of the same is bound to pay what they are reasonably worth." (*Moulin* v. *Columbet*, 22 Cal. 508, 509.)'"

See, also, *Lundberg* v. *Katz*, 44 Cal.App.2d 38, 41, 45 [111 P.2d 917]; *Wax* v. *Adair*, 16 Cal.App.2d 393 [60 P.2d 904]; *Turell* v. *Anderson*, 16 Cal.App.2d 445 [60 P.2d 906.]

█ The statute of limitations does not apply to a claim such as is here involved for "where there is an express or implied promise to pay on the termination of the services the statute of limitations does not start to run until the termination of the services—in the instant case upon the death of Haskell." (*Lloyd* v. *Kleefisch, supra,* at page 413.)

█ Nor do the provisions of subdivision 1 of section 1624 of the Civil Code, which require an agreement that by its terms is not to be performed within a year from the making thereof to be evidenced by a writing subscribed by the party to be charged, apply "to contracts, either express or implied, for the rendition of services for an indefinite period of time and payment to be made at the termination of the relationship." (*Lauritsen* v. *Goldsmith*, 99 Cal.App. 671, 675 [279 P. 168]; *Hagan* v. *McNary*, 170 Cal. 141 [148 P. 937, L.R.A. 1915E 562]; *Mayborne* v. *Citizens T. & S. Bank*, 46 Cal.App. 178 [188 P. 1034].)

There is little or no dispute between appellant and respondent as to the foregoing principles of law, but appellant contends that under the evidence the court was not justified in rendering judgment for the respondent. Appellant argues that the evidence showed that he had rendered continuous services for decedent to the date of her death and that there was a promise implied in law that payment should take place upon the termination of the services. He cites *Lloyd* v. *Kleefisch, supra,* and various cases therein cited. All of these cases are cases in which the trial court found in favor of the plaintiff and in which the judgments were affirmed. But in each case it was a question as to whether or not the evidence sustained the judgment.

In *Mayborne* v. *Citizens Trust & Savings Bank, supra,* at page 182, the court quoted from *Crane* v. *Derrick*, 157 Cal. 667 [109 P. 31], as follows:

"It has been said many times that the question is one that must be determined on the circumstances of the particular case, the question in each case being whether it can reasonably be inferred that pecuniary compensation was in the view of

the parties at the time the services were rendered or the support was furnished."

It also said:

"We are required, of course, to go no further than to say that such conclusion of the trial court is not unreasonable, although we may believe that a finding the other way would be amply supported."

If appellant had prevailed in the trial court, as did the plaintiffs in the cases cited by him, we would, in accordance with the rule laid down in those cases, be compelled to hold that there was ample evidence in the record to support such a judgment. But in considering the sufficiency of the evidence in this case we must keep in mind the language of our Supreme Court in *Juchert* v. *California Water Service Co.*, 16 Cal.2d 500, at page 503 [106 P.2d 886]:

"As is always true on such appeals, all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences must be indulged in to uphold the verdict, if possible. It is elementary that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. And when two or more inferences can reasonably be deduced from the facts, the reviewing court is without power to substitute its deductions for those of the jury or trial court. (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427 [45 P.2d 183]; *Treadwell* v. *Nickel*, 194 Cal. 243 [228 P. 25]; *Bancroft-Whitney Co.* v. *McHugh*, 166 Cal. 140 [134 P. 1157]; *Wing* v. *Kishi*, 92 Cal.App. 495 [268 P. 483].)"

It must be borne in mind that in cases of this character the surrounding facts and circumstances are usually such that different constructions may reasonably be placed upon them and one trier of facts may reasonably draw one inference and another trier of facts may reasonably draw a contrary inference. This is clearly recognized in numerous cases. In the early and frequently cited and frequently approved case of *Moulin* v. *Columbet*, 22 Cal. 508, the court said at page 510:

"When work is done by one for the benefit of another, with his knowledge or approbation, the law will imply a promise to pay for it, unless it appear that there was an understanding that no compensation should be given; but where there is such an understanding the law will not imply a promise, and such understanding may be implied from circumstances."

And in *Mayborne* v. *Citizens T. & S. Bank, supra,* the court said at pages 181, 182, 183:

"Appellant does not dispute the general rule, as stated in *Moulin* v. *Columbet,* 22 Cal. 509, that 'when services are rendered by one person, from which another derives a benefit, although there is no express contract or agreement to pay for the services, there is a "presumption of law" which arises from the proof of services rendered, that the person enjoying the benefit of the same is bound to pay what they are reasonably worth.'

"It is, though, justly contended that this is a mere presumption and 'liable to be rebutted by proof of a special agreement to pay therefor a particular amount or in a particular manner, or by proof that the services were intended to be gratuitous, or even by particular circumstances, from which the law would raise the counter-presumption that the services were not intended to be a charge against the party who was benefited thereby.' . . . We need not review these various decisions as we find a sufficient guide for our purpose in the declarations of the supreme court in *Crane* v. *Derrick,* 157 Cal. 667 [109 P. 31], as follows: 'It has been said many times that the question is one that must be determined on the circumstances of the particular case, the question in each case being whether it can reasonably be inferred that pecuniary compensation was in the view of the parties at the time the services were rendered or the support was furnished. . . . We are required, of course, to go no further than to say that such conclusion of the trial court is not unreasonable, although we may believe that a finding the other way would be amply supported."

Bearing in mind the legal principles hereinbefore set forth, can we say that the conclusion of the trial court that there was no understanding, express or implied, between appellant and decedent that appellant's services were to be paid for at the termination thereof, finds no support in the record? We do not think so. A reading of the record convinces us that it is a fair inference from the evidence that appellant lived and made his headquarters on decedent's farm and did the necessary work upon the farm, and that in return therefor decedent financed appellant in his mining ventures to the extent of many thousands of dollars over a period of many years. There is nowhere in the record any direct statement by decedent to appellant that appellant was to be

compensated for his services nor is there any evidence that appellant ever made any demand upon decedent for compensation; nor is there any evidence of any statement or agreement as to the amount of compensation that appellant was to receive. There was testimony that appellant and decedent had quarreled over money matters in the last few years of her life and that decedent had stated that "all the money went into the mines and that she didn't get a dollar," and that appellant had stated that "if he could get something out of the mines he would straighten out all of the bills."

In *Mayborne* v. *Citizens T. & S. Bank, supra,* the court said at page 182:

"Our own decisions support the doctrine that to authorize compensation in such cases the circumstances must be such as to warrant the inference that it was the expectation of both parties that compensation should be made."

In *Seib* v. *Mitchell,* 10 Cal.App.2d 91 [52 P.2d 281], it is stated at page 94:

"An express contract need not necessarily be proved but 'it is sufficient if from the facts and circumstances it reasonably can be inferred that compensation was in the view and contemplation of the parties.'"

While it may be conceded that the evidence adduced by appellant at the trial might well have persuaded the trial judge to decide in favor of appellant, and that a finding in favor of appellant would have found ample support in the record, yet we are convinced that there is likewise ample support in the record for the trial court's conclusion against appellant.

The trial court is the sole judge of the weight and effect of testimony and of the inferences that may reasonably be drawn therefrom. The trial judge who observes the witnesses and hears them testify is in a position to gain impressions from such testimony of such witnesses which are not apparent in a record. And when, as in the instant case, two inferences can reasonably be deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.

Appellant makes the further contention that the trial court erred in admitting into evidence "self-serving and hearsay statements of decedent which statements [appellant contends] constitute the entire foundation upon which the Court's decision in favor of defendant is based."

During the examination of Annie J. Rodgers, a witness for appellant, the following questions were asked and answers given:

"Q. Did she mention something about them to you? A. Notes? Q. Yes, did she say anything about taking care of Mr. Wescoatt as long as he lived? A. No, she said he had done things for her and if she got her bills paid while she lived she would like to do something for him, but she said he got her so much in debt,—that's all I can tell you."

Upon cross-examination the following occurred:

"Q. Just a moment. You say, Mrs. Rodgers, you do recall that Effie Meeker told you at one time if she got her bills paid she would like to do something for Mr. Wescoatt? A. I told Mr. DeMeo that; she said she expected him to pay her bills that he caused her. THE COURT: And that he got her so much in debt? A. Yes, that she expected him to pay the bills and that he said he would. MR. DeMEO: Pardon me, are you repeating what Miss Meeker said? A. Yes. MR. DeMEO: That's self-serving—that he would pay the bills. . . . THE COURT: And she expected him to pay the bills? A. Yes, and that he promised to pay the bills. THE COURT: She said that? A. Yes, if he could make his mines good. MR. DeMEO: I ask that be stricken as self-serving statement on her part; it is no more admissible than any other person's self-serving statement, and on the further ground it is not my examination. . . . THE COURT: Overruled. It is, in effect, what the witness testified to on direct examination; that's what she said on direct examination. MR. DeMEO: Well, I asked the question with reference to notes and now we are going into an entirely different branch."

Appellant contends that the trial court not only erred in refusing to strike out the testimony of the witness Annie J. Rodgers to the effect that decedent had stated to her that she expected appellant to pay the bills he had caused her and that he had said that he would but that the trial court made this incompetent testimony the basis of its decision. We believe that what we have heretofore set forth shows that there is sufficient evidence in the record, independent of this particular testimony, to support the conclusion of the trial court, but nevertheless it must be conceded that if the court improperly permitted to remain in the record the testimony sought to be stricken, it is a serious error.

Appellant cites *Barcroft* v. *Livacich*, 35 Cal.App.2d 710

[96 P.2d 951], in which the well-settled rule is stated as follows at page 718:

"Declarations of a person, since deceased, not against, but in support of his own interests, and made outside the presence of the party sought to be bound by them, are not admissible in favor of those who claim rights which the declarations would maintain. (*Steinberger* v. *Young*, 175 Cal. 81 [165 P. 432].)"

While it is true that, ordinarily, a statement of decedent made outside of the presence of appellant and against his interest, would be inadmissible, we are of the opinion that in view of the testimony of the witness on direct examination, when being interrogated by counsel for appellant, the ruling of the court in this instance was proper. The testimony which counsel sought to strike out upon cross-examination appears to be part of the same conversation to which the witness had testified upon direct examination by appellant's counsel.

Section 1854 of the Code of Civil Procedure reads as follows:

"When part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other; . . . and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing, which is necessary to make it understood, may also be given in evidence."

In *Hinton* v. *Welch*, 179 Cal. 463, the court said at page 465 [177 P. 282]:

"The plaintiff, while upon the witness-stand in her own behalf, but while undergoing cross-examination, was asked this question, 'You received, did you not, Mrs. Hinton, all of the money which you were entitled to from the estate of your father?' The plaintiff answered this question at some length, in the course of which she volunteered the statement that she had written a letter to her brother requesting a statement as to her half interest in the ranch to which she had received a reply. The defendant produced her said letter and offered it in evidence and thereupon offered in evidence the decedent's letter in reply. To the admission of this latter letter the plaintiff objected upon the ground that it was inadmissible as a self-serving declaration. We are inclined to the opinion that this objection was not well taken, for while we think it is true that a party may not, under the provisions

of section 1854 of the Code of Civil Procedure, offer a letter of an opposing party for the mere purpose of laying the foundation for the admission of an answer to it containing self-serving declarations on the part of the writer of such reply, yet when, as in this case, the plaintiff has volunteered to state in part the subject matter of a correspondence between the parties, the other party is entitled to have and to present in evidence the whole correspondence to which her testimony thus volunteered relates, upon the same principle, also covered by section 1854 of the Code of Civil Procedure, that when part of a conversation is given in evidence by one party, the whole conversation may be given by the other party, even though it may embrace the latter's self-serving declarations.''

In *Reeves* v. *Vallow,* 16 Cal.2d 95, the court said at page 99 [104 P.2d 1017]:

''The defendant sought to introduce in evidence the copy of the will originally annexed to the complaint, for the benefit of the inference which it might afford that the $20,000 legacy therein to Mrs. Reeves was intended as a gift rather than as compensation for her services. The copy contained the following statement: 'I have been residing with Clara Reeves and all sums due her are paid except for the current month.' This appeared with a declaration in the will of the decedent's assets and liabilities. The court sustained an objection to its introduction on the ground that the declaration of the decedent therein was self-serving.

''The complaint as originally filed, with the allegations referring to the copy of the will annexed thereto as an exhibit, was verified by the plaintiff. By striking out the allegations of the complaint referring to the will and the copy annexed thereto, and by introducing evidence of the execution of the will and its later destruction and testimony of a portion of its contents, the plaintiff sought to present to the jury only the inferences therefrom which were favorable to her. But inasmuch as the plaintiff's witnesses had testified to a portion of the contents of the will, the defendant was entitled to introduce the entire copy of the will for the purpose of rebutting the inferences sought to be attributed to it by the plaintiff. The plaintiff was not entitled to rely on a portion of the will as proof of the decedent's intent in her favor, if a different intent was discoverable when the entire will was considered. That the statements relied on by the defendant

might have been self-serving declarations of the decedent was immaterial."

In *Sly* v. *Abbott,* 89 Cal.App. 209 [264 P. 507], it was said at page 218:

". . . the evidence was admissible upon the issue of whether plaintiff was ready, willing, and able to perform his obligations and was also admissible upon the theory, as expressed by the trial court, that plaintiff himself, having first offered evidence of this conference, the defendants were at liberty to offer evidence in contradiction of that offered and in fact to show the entire conversation which occurred at one time and one place. (Code Civ. Proc., sec. 1854.)"

We are, therefore, of the opinion that the trial court did not err in refusing to strike out the testimony hereinbefore set forth. Appellant sought to elicit from the witness what Effie Meeker had told her as to what she (decedent) had intended to do for appellant. In answer to a question by appellant's counsel on direct examination the witness related what was no doubt part of a conversation. The respondent was undoubtedly entitled to ask for the remainder of the conversation and to go fully into what was said. The fact that some of these statements may have been favorable to respondent and self-serving did not, under the authorities hereinbefore cited, render them inadmissible or immaterial. If a party chooses to prove oral declarations against interest of a deceased person made to a witness called by him, he cannot prevent the opposing party from bringing out all that was said by decedent in the conversations in which the statements were made, even though this may result in getting into the record statements that might otherwise be excluded as self-serving.

■ Appellant's final contention is that the trial court "erred in failing to admit and consider evidence as to the justice and equity of plaintiff's claim." The record shows that appellant offered testimony to the effect that decedent was not on friendly terms with her relatives and that her relatives had refused to assist her. This testimony was objected to by respondent as being immaterial. The court permitted it to go into the record subject to respondent's motion to strike out. So far as the record shows, such a motion was neither made nor ruled upon, so we must consider that the testimony was before the court and considered by it. However, even if the court had excluded or failed to consider the evidence in ques-

tion, it is difficult to see how such ruling could be considered prejudicial error because the relations of decedent with her relatives could have little bearing upon the question of whether or not there was an agreement, express or implied, between appellant and decedent that appellant should be compensated for his work on the farm of decedent.

In view of the foregoing our conclusion is that the record supports the judgment of the trial court, that no prejudicial error has been committed and that the judgment should be and hereby is affirmed.

Adams, P. J., and Thompson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 25, 1944.