[Civ. No. 8017.   Third Dist.   Feb. 15, 1952.]

DEL DeROSIER, Respondent, v. JOHN VIERRA, Appellant.

**292**

Goldstein, Barceloux & Goldstein for Appellant.

Hewitt & McBride for Respondent.

SCHOTTKY, J. pro tem.—Plaintiff and respondent commenced an action against defendant and appellant, the complaint containing two counts: (1) for $1,688.80 as the reasonable value of work, labor and services in the nature of land planing, scraping, ripping and surveying, at the special instance and request of defendant; and (2) upon an open book account for the same amount.

Defendant filed an answer denying the material allegations of the complaint, and also filed a cross-complaint in which he alleged that plaintiff agreed to level a 52-acre tract of land for defendant in such a good workmanlike manner that the entire tract could be irrigated by water poured thereon at a point designated by defendant previous to beginning the work; that plaintiff so negligently performed the work that defendant was unable to irrigate the land from said predesignated point; that after the work was done, defendant planted a bean crop but because of being unable to irrigate defendant was deprived of a bean crop which would have yielded 891 sacks more than were actually yielded, the sacks being worth $4.00 each, and the total profit would have been $3,564; that thereafter defendant planted the tract to barley, and while the barley was growing and immature, plaintiff offered to come in and level the land on condition that plaintiff be allowed to do so without delay and that defendant should, and he did, plow under the growing barley; that the plaintiff entered and so negligently performed the leveling that the defendant was unable to irrigate from the predesignated point; that as a result defendant lost 900 sacks of barley at $1.25 a sack and a total of $1,125; that as a result of the excessive plowing, working and leveling of the land caused by plaintiff's negligence, defendant suffered damage to his land in the sum of $100 an acre and total of $5,200; that by reason of defendant's being unable to irrigate he was unable to raise crops in 1948 and 1949 at a profit of $3,500 for each of those two years, and therefore he was damaged in the sum of $7,000. Defendant prayed judgment for $16,889 upon his cross-complaint.

Plaintiff denied all of the material allegations of the cross-complaint, and, following a trial before the court without a jury, the court found that the allegations of the complaint

were true and those of the cross-complaint were untrue. Judgment was entered for plaintiff in the sum of $1,688.80, interest and costs, as prayed for in the complaint. Defendant's motion for a new trial was denied, and defendant has appealed from the judgment.

Appellant bases his argument for a reversal of the judgment upon the following points: (1) There is no substantial evidence from which an implied promise to pay for the work done in May and June, 1949, may be deduced; and (2) the work done in May and June, 1949, was itself materially defective, there being no substantial evidence to the contrary, and therefore defendant did not become bound to pay the reasonable value thereof.

It is a rule too well established to require the citation of authorities that before an appellate tribunal is justified in reversing a judgment upon the ground of the insufficiency of the evidence, it must appear from the record that, accepting the full force of the evidence adduced, together with every inference favorable to the prevailing party which may reasonably be drawn therefrom, it still appears that the law precludes the prevailing party from recovering a judgment. The evidence must be construed most strongly against the losing party. Every favorable inference and presumption which may fairly be deduced from the evidence should be resolved in favor of the prevailing party. The prevailing party's evidence must ordinarily be accepted as true, and evidence which is contradictory to it must be disregarded.

Bearing in mind this familiar rule, which, we are constrained to state, is too often disregarded by counsel who insist upon arguing conflicting evidence before an appellate tribunal, we shall summarize briefly the evidence as shown by the record.

The controversy arose out of the fact that plaintiff, a land leveler by occupation, had leveled several pieces of land for defendant. In the fall of 1947 defendant asked plaintiff to level a 70-acre tract which he did and defendant paid therefor without complaint. Adjoining the 70-acre tract, defendant owned a 52-acre tract and asked plaintiff to level that tract and to grade it for irrigation from a pipe line located at the north end of the tract. According to the testimony of plaintiff, he viewed the 52-acre tract and advised defendant it could not be leveled for irrigation due to so much vegetation that would result in settling and causing low spots. That despite his advice, defendant insisted that plaintiff try to

accomplish the leveling and grading. Plaintiff told defendant the tract was not in shape to survey, due to roughness, and again repeated that the tract was not susceptible to grading, whereupon defendant agreed to and did attempt to improve the tract himself so it could be surveyed for grading and leveling. Thereafter, and at defendant's insistence, plaintiff leveled and graded the tract as best he could and defendant paid for the job, without apparent complaint.

We come now to the precise controversy involved in this appeal. According to plaintiff, defendant, in the month of May, 1949, asked plaintiff to return to the 52-acre tract and again level and grade it. Again plaintiff told defendant the land could not be leveled and graded due to vegetation that would surely result in settling, and that the job would not be satisfactory. But defendant insisted and so plaintiff worked over the same 52-acre tract again.

Defendant claimed plaintiff did the job over to correct his defective first job for which defendant paid without complaint, and therefore defendant should not be required to pay for the corrective second job. Plaintiff denied that he ever agreed to do the work over again to correct the first job. He admitted that when he started the second job nothing was said about the cost thereof or whether defendant would pay for it, but he argues that there was an implied promise on defendant's part to pay for the second job.

As hereinbefore stated the trial court found in favor of plaintiff on all of the issues and this necessarily included a finding that there was an implied promise on the part of defendant to pay for the second job. Defendant and appellant argues that there was no substantial evidence from which an implied promise to pay for the second job could be deduced. We are unable to agree with this contention. ■ Furthermore, even in the absence of an express agreement, the rule is as stated in the early and frequently approved case of *Moulin* v. *Columbet*, 22 Cal. 508, at page 510: "When work is done by one for the benefit of another, with his knowledge or approbation, the law will imply a promise to pay for it, unless it appear that there was an understanding that no compensation should be given."

And in *Lloyd* v. *Kleefisch*, 48 Cal.App.2d 408, 412 [120 P.2d 97], the court said:

". . . When services are rendered by one person, from which another derives a benefit, although there is no express contract or agreement to pay for the services, there is a

'presumption of law' which arises from the proof of services rendered, that the person enjoying the benefit of the same is bound to pay what they are reasonably worth. (*Moulin* v. *Columbet*, 22 Cal. 508, 509.)''

As to appellant's contention that the work done in May and June, 1949, was materially defective and that there was no substantial evidence to the contrary, it suffices to say that the trial court found against this contention and that there is ample evidence in the record to sustain the finding. The trial judge heard the testimony and observed the witnesses, and while it is apparent from a reading of the transcript of 235 pages that the case was hotly contested and that the evidence was highly conflicting, we are convinced that there is substantial evidence to support the conclusion of the trial court on all of the issues of the case.

It is elementary that when a judgment is attacked as being unsupported by the evidence, the power of an appellate court begins and ends with a determination as to whether there is substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the trial court. (*Juchert* v. *California Water Service Co.*, 16 Cal.2d 500, 503 [106 P.2d 886].)

The judgment is affirmed.

Adams, P. J., and Van Dyke, J., concurred.