[Civ. No. 27375. Second Dist., Div. One. Mar. 17, 1964.]

PACITA A. GETTEMY et al., Plaintiffs and Respondents, v. STAR HOUSE MOVERS, INC., Defendant and Appellant.

Elmer O. Docken, McBain & Morgan and James L. Roper for Defendant and Appellant.

Earl A. Barnes for Plaintiffs and Respondents.

WOOD, P. J.—The surviving wife and two minor children of James Gettemy, deceased, obtained a verdict and judgment against defendant Star House Movers, Inc., for $50,000 as damages for wrongful death of Mr. Gettemy, who was struck by a falling palm tree. Said defendant appeals from the judgment. Verdict and judgment were in favor of the other defendant, Rahenkamp.

The first cause of action of the second amended complaint alleged that defendants Rahenkamp and Star House Movers were engaged in a joint venture for the purpose, among others, of removing large palm trees from the premises at 344 Cedar Avenue, Long Beach; the defendant Rahenkamp was

the agent of Star and was acting within the course of such agency; plaintiff's decedent, Mr. Gettemy, was the employee of a joint venture composed of defendants Rahenkamp and Star, and each of them had failed to secure payment of compensation in accordance with section 3700 of the Labor Code; on November 22, 1961, while attempting to remove a palm tree from 344 Cedar Avenue, Long Beach, the defendants, individually and as a joint venture, did negligently fail to secure said tree after severing its roots from the ground; as a proximate result of said conduct, the tree fell upon Mr. Gettemy and caused his death.

The second cause of action alleged, among other things, that on November 22, 1961, defendants Rahenkamp and Star occupied the premises at 344 Cedar Avenue by right of permission or license from the owner, and on said date Mr. Gettemy was working there at the invitation and request of defendants.

The third cause of action alleged, among other things, that defendant Star secured from the Building and Safety Department of Long Beach a permit to demolish and remove a structure and trees from premises at said 344 Cedar Avenue; that defendant Star through its officers knew that under the Municipal Code of Long Beach such permit could be issued only to the holder of a valid building-contractor's license issued by the State of California; that defendant Star, through its officers, knew that defendant Rahenkamp was neither licensed as a contractor with the city of Long Beach, nor licensed as a contractor by the state; that notwithstanding such knowledge, and the further knowledge that Rahenkamp was not properly, adequately, and safely equipped to perform the work at said 344 Cedar Avenue, the defendant Star negligently and unlawfully conspired with and selected Rahenkamp to perform the work called for by the permit.

Appellant (Star) contends that the evidence was insufficient to support the verdict and judgment against it; that the court erred in refusing to give certain requested instructions and in denying appellant's request that the jury make special findings.

Defendant Star House Movers and Mr. Maddox, the owner of the premises at said 344 Cedar Avenue, entered into a written agreement whereby Star agreed to demolish a two-story house, remove three palm trees, and otherwise clear the lot at said address. Star made a subcontract with Rahenkamp

whereby he would do the actual work of demolishing the house, removing the trees, and clearing the lot. Two days before the accident, Rahenkamp employed James Gettemy (decedent) to assist in the work. Star was engaged in the business of moving and demolishing houses, but the demolishing part of the business was usually done by subcontractors. Rahenkamp had done demolition work for Star for approximately four years. Star, in making the contract with the owner of the premises, included in the contract price an amount for its own profit. Star had obtained compensation insurance and was licensed by the state as a general contractor. It applied for and obtained a permit from the city of Long Beach to do the demolition work. Rahenkamp did not have compensation insurance or a contractor's license, and he did not obtain a permit to do the work. Star had obtained the permits for the many other demolition jobs that Rahenkamp had done for Star. It may be stated generally that Rahenkamp's demolition equipment consisted of two trucks and a crane—the crane was rated as having a lifting capacity of 12 tons. His full-time employee, William Cox, had been employed by him about four years. Rahenkamp and Cox had removed many palm trees but had not removed any tree as large as the one involved here, which was about 40 feet high, 2 feet in diameter, and weighed approximately 9 tons.

Rahenkamp testified that the method which he and Cox usually followed in removing a palm tree was to dig a trench around the tree so that they could cut the roots, undercut the tree at a 45-degree angle, and cause it to fall in a certain direction; the roots on palm trees are very much the same— they are about finger-size and are close together; it is a tedious task to cut such a tree down—it is like chopping into a bale of cotton; it is impossible to pull a palm tree down unless the roots are cut; if the roots are not cut, it is impossible to pull a palm tree over without breaking it off and leaving a stump.

On the day the demolition work was commenced at said address, Cox and Gettemy started digging and cutting around one of the two larger palm trees. They worked at the tree, off and on, between the times that Cox drove a truck to the dump and otherwise helped Rahenkamp, who was operating the crane in demolishing the house and in loading the truck. During the half hour before the tree fell, Gettemy was digging at one side of the tree, and Cox was at the other side of the tree undercutting it in the direction that he intended that it should fall. About 15 minutes before it fell, Rahen-

kamp came from the place where he was operating the crane and said that he thought there had been enough cutting on the tree. Cox thought it had not been cut enough, and he continued undercutting for a few minutes. Cox had planned for the tree to fall between the two houses which were about 30 feet apart. After Cox had quit undercutting the tree he walked to the place where Rahenkamp was operating the crane, but he did not talk to Rahenkamp. Then, as he went away and was about 30 feet from Rahenkamp, the tree fell between the two houses. It struck and killed Mr. Gettemy.

It does not appear that an officer or employee of Star was at the Cedar Avenue premises during the demolition or tree-removing work.

The street-tree superintendent of the Parks Department of Long Beach testified that a customary method of removing a palm tree in the City of Long Beach is to top the tree by cutting off all the fronds; then to fasten guy lines to the tree; then undercut the tree at ground level—and while making the final cut to guide the falling tree with the guide lines; then to dig the stump out or remove it with a grinding machine. He testified further that another customary method is to top the tree as in the first method; then at a place about half way down, undercut the upper part of the tree and drop that part by using the guide lines; then by using a winch truck with a cable hooked to the remaining part of the tree pull the remaining part over—while digging under the tree. He testified further that it is not safe practice to remove a palm tree in a municipality by digging around and under the tree, and by undercutting it.

Cox testified that he did not intend to use a crane in laying the tree down or intend to guide its fall with anything other than undercutting.

Edwin Firnell, one of the owners and managers of Star House Movers, testified that the removal of a palm tree in a congested area is done differently from a removal in an open field; that, on a tree of the size of the one involved here, a cable is used for safety, but sometimes in a field or in the woods nothing is used as a guide. He also testified that before they made the subcontract with Rahenkamp he (witness) went to 344 Cedar Avenue in Long Beach and observed that automobiles were parked on the lot behind the house—that it was a "downtown parking lot."

Thomas Firnell, one of the owners and managers of Star, testified to the effect that ordinarily while the last undercut-

ting is being done, a cable is hooked onto the tree. He also testified that he thought that Rahenkamp had some type of license but he (witness) did not know what it was, and he assumed that he had some type of license in order to operate.

Rahenkamp testified that he thought he had discussed with Edwin and Thomas Firnell the fact that he (Rahenkamp) did not have a contractor's license; and that he thought that they knew he did not have such a license.

Mr. Gettemy had not had any experience in removing palm trees.

It is not contended that Mr. Gettemy was an employee of Star.

As above stated, appellant (Star) contends that the evidence was insufficient to support the verdict and judgment against appellant. It argues that Rahenkamp was an independent contractor, and that under such relationship Star would not be liable. It argues further that the verdict which was in favor of Rahenkamp and against Star is inconsistent, contradictory, and against law under any of plaintiffs' alleged theories of the case as alleged in the first and second causes of action. In the first cause of action it was alleged that Rahenkamp was an agent of and joint venturer with Star. Appellant asserts that since those theories of agency and joint venture were rejected by the jury when it rendered a verdict in favor of Rahenkamp, there cannot be a judgment against Star based on those theories. In the second cause of action it was alleged that the defendants occupied the premises by permission of the owner, and that Mr. Gettemy was working there as an invitee of defendants. Appellant argues that in order for plaintiffs to prevail under this cause of action it would be necessary to prove an agency relationship between Rahenkamp, who actually occupied the premises, and Star, the alleged principal; that since the jury rejected the agency theory when it returned a verdict for Rahenkamp, there cannot be a judgment against Star on this cause of action; and that, assuming that Star did owe the duty of an occupier to Gettemy, there is no evidence that any unsafe condition existed—that when Rahenkamp first occupied the premises they were in safe condition without any patent or latent defects. The third cause of action was to the effect that there was independent negligence on the part of Star— independent of its negligence based on the theories of agency and joint venture—in that Star negligently and knowingly selected an unlicensed and improperly equipped person (Rahenkamp) as subcontractor to perform the work. Appel-

lant argues that there is no evidence of a causal connection between the alleged selection of an unlicensed person by Star and the death of the decedent—that there was no proof of a proximate cause or relationship between the alleged negligent selection and the injury; that a requirement, in proving liability based on negligent selection, is that it be proved that the selected person committed a negligent act; and that since there was a verdict in favor of Rahenkamp, the theory of negligent selection by Star was not established.

Respondents (plaintiffs) assert that, under the evidence, Star's liability may be based upon its independent conduct in that it violated legal duties it owed to decedent—duties which it owed as the employer of Rahenkamp, and as an occupier in control of the premises; and that since Star is liable by reason of its independent conduct, the verdict in favor of Rahenkamp is not inconsistent or contradictory as asserted by Star.

■ The mere fact that Rahenkamp was an independent contractor would not constitute a defense as to Star. ■ " 'One who employs an independent contractor to do work which the employer should recognize as necessarily creating, during its progress, conditions containing an unreasonable risk of bodily harm to others unless special precautions are taken, is subject to liability for bodily harm caused to them by the absence of such precautions, if the employer (a) fails to provide in the contract that the contractor shall take such precautions . . . , or (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.' " (*Woolen* v. *Aerojet General Corp.*, 57 Cal.2d 407, 410 [20 Cal.Rptr. 12, 369 P.2d 708].) The reference to "others," in that quotation, includes reference to employees of an independent contractor. (*Ibid.*) ■■ In the present case, the evidence was sufficient to support a finding by the jury that Star employed Rahenkamp as an independent contractor to do work which Star should have known would necessarily create an unreasonable risk to the employees of Rahenkamp, unless special precautions were taken. It was a large palm tree, about 40 feet high, 2 feet in diameter, and located near dwelling houses and a public sidewalk in the downtown area of Long Beach. There was evidence that: it was not safe practice to remove a palm tree in a municipality by digging around and under the tree, and undercutting it; and that the customary methods of removing such trees included the use of mechanical devices and guide lines or cables

in controlling and guiding the fall of the tree. Edwin and Thomas Firnell, who were owners and managers of Star, testified to the effect that, in removing a tree such as the one involved here, ordinarily a cable is used. Rahenkamp's usual method of removing a palm tree was the undercutting method (without using a cable or crane), which consisted of digging a trench around the base of the tree and undercutting the trunk and roots on the side of the tree in the direction it was intended that the tree should fall. ▮ In view of Star's several years of making subcontracts with Rahenkamp, it is reasonable to assume that Star knew Rahenkamp's method and knew, at the time it made this subcontract, that it was probable that Rahenkamp would follow his usual method in removing this tree. Since Edwin Firnell went to the premises before Star made the subcontract, it is reasonable to assume, in view of the size and location of the tree, that Star should have recognized that the removal of the tree pursuant to Rahenkamp's usual method would necessarily create unreasonable risks of injury to others, including Rahenkamp's employees. The jury could reasonably have found that Star knew that Rahenkamp was not a licensed contractor. It does not appear that Star took any special precautions to prevent an unreasonable risk in removing the tree. Under the contemplated method of such removal a dangerous condition would necessarily be created where the 40-foot-high tree, after being undercut and not supported by a cable or crane or other controlling device, would be standing only by reason of its being practically in a state of balance — with some support from comparatively few uncut roots and no support from the ground around its base (the surrounding ground having been removed to a depth of approximately 1½ feet).

▮ Star, as the general contractor, had the right to occupy the premises and in legal effect was an occupier thereof. In *Revels* v. *Southern Cal. Edison Co.*, 113 Cal.App.2d 673, 678 [248 P.2d 986], it is said: "The general rule is that a general contractor on a construction job who is in control of the premises is burdened with the duty to use ordinary care to provide a safe place for employees of a subcontractor to work, including the duty to warn such employees of a danger, either known to the general contractor, or discoverable by the exercise of ordinary care, or otherwise to protect the employees from injury, and to avoid exposing them to injury on account of dangerous conditions." As above stated, the

decedent, Mr. Gettemy, was employed by the subcontractor, Rahenkamp. "An employee of a subcontractor occupies the relation of an invitee to the general contractor." (*Gonzales* v. *Robert Hiller Constr. Co.*, 179 Cal.App.2d 522, 530 [3 Cal.Rptr. 832]; see also *Revels* v. *Southern Cal. Edison Co., supra,* at p. 677.) The duty owed by a general contractor to an invitee "is to exercise ordinary care to keep the premises in a reasonably safe condition, or to warn of danger." (*Revels* v. *Southern Cal. Edison Co., supra,* at p. 677.) As above stated, appellant (Star) argues that there was no evidence that an unsafe condition existed — that when Rahenkamp first occupied the premises they were in safe condition without any patent or latent defects. It is true that the palm tree did not constitute an unsafe condition when Star and Rahenkamp first became the occupiers of the premises. As above indicated, however, the jury could have found that it should have been reasonably apparent to Star that in the course of removing the tree, according to the Rahenkamp method, an unsafe and dangerous condition of the tree would be created; that Star knew that it was probable that the Rahenkamp method would be followed; and that Star should have taken precautions to prevent the creation of such dangerous condition.

 The evidence was sufficient to support findings of primary liability on the part of Star by reason of negligence in selecting the subcontractor and in failing to maintain the premises in a reasonably safe condition.

 Appellant (Star) contends further that the court erred in refusing to give an instruction, requested by defendants, which stated in part as follows: "... If at the time of the injury ... said deceased was an employee of the defendant Star House Movers, Inc., and was performing service growing out of ... his employment ... and, if the alleged injury was proximately caused by such employment, then, under the Workmen's Compensation Act ... the Industrial Accident Commission has exclusive jurisdiction to consider plaintiffs' claim and to make or not to make an award therefor; and, in that event, your verdict in this action must be for the defendant . . . ." Appellant argues that the question as to employment of decedent by one or both of the defendants, and the failure of one or both of the defendants to secure compensation insurance, was raised by the pleadings. In connection with that argument, appellant refers to an allegation of the first cause of action to the effect that the

decedent was an employee of the joint venture, and that each defendant failed to secure payment of compensation under section 3700 of the Labor Code. Also in support of that argument, appellant refers to an allegation in its answer to the effect that it (Star) had, at the time of the loss herein, a policy of insurance for Workmen's Compensation and Employer's Liability, ''and should it be found that plaintiffs' decedent was an employee of this defendant at the time of the loss, the only applicable and exclusive remedy for the plaintiffs is under the Workmen's Compensation Law'' and this action should be dismissed. Appellant argues further that the only theory upon which Star could be held solely liable would be that decedent was an employee of an uninsured employer; but there was no evidence that Star was uninsured, except as to a joint venture; and that the verdict in favor of Rahenkamp refuted the existence of such a venture. It is appellant's position that its said requested instruction should have been given for the reason that if the decedent was an employee of Star, the sole remedy available to plaintiffs would be the Workmen's Compensation Act.

It is to be noted that the complaint does not allege that the decedent was an employee of Star, but does allege that he was an employee of a joint venture comprised of both defendants. The answer does not allege directly that decedent was an employee of Star, but does state that ''should it be found that plaintiffs' decedent was an employee'' of Star, the exclusive remedy for plaintiffs would be the Workmen's Compensation Act.

In any event, neither the joint pretrial statement nor the pretrial order states that any party is contending that the decedent was an employee of Star. Those documents recite that the decedent was an employee of Rahenkamp. In appellant's opening brief (p. 13) it is stated it has never been contended in the pleadings or otherwise that the decedent was an employee of Star except that he was an employee of a joint venture (of Star and Rahenkamp). It is to be noted further that Rahenkamp conceded that he had not obtained compensation insurance. The requested instruction did not cover the point that plaintiffs would have a right to maintain an action against an employer who was uninsured. The court did not err in refusing to give the instruction.

Appellant also contends that the court erred in refusing to give its requested instruction which was in part: ''While there are two defendants in this action, one of them

has been sued on the theory that ... [it] was a principal for whom the other defendant was acting as agent. . . . Whether the facts support this theory is an issue that you may have to decide. . . . If you find that the defendant is not liable . . . it becomes unnecessary to consider the question of agency. . . . But if you find that the defendant ————— is liable, you then must decide whether . . . he . . . was acting as agent for the defendant. . . . If you find either that defendant ————— was not then the agent . . . or, if the agent, was not acting within the scope of his . . . authority, then your verdict must be in favor of the defendant—————. But if you find that the defendant was acting as the agent . . . and within the scope of his . . . authority, then if one is liable, both are liable.'' It is to be noted that the instruction states that one of the defendants has been sued on *the* theory of agency; whereas, the fact is there were other theories. Furthermore, at the request of defendants, an instruction properly defining ''agency'' was given. Also at the request of defendants, the court gave a lengthy instruction explaining points of difference with respect to an agent and an independent contractor. The court did not err in refusing to give the requested instruction.

Appellant contends further that the court erred in refusing its request that the jury be instructed to make special findings regarding seven questions. Those questions were to the following effect: Was there a joint venture? Was Rahenkamp an agent? Was he an independent contractor? Did Star negligently select an independent contractor? Was decedent an employee of Rahenkamp? Was he an employee of Star? Was Star uninsured with respect to decedent?

Appellant argues that the granting of its request for special findings would have clarified the general verdict. Whether or not the special interrogatories should have been submitted to the jury was a matter within the discretion of the trial court. (See *Lloyd* v. *Kleefisch,* 48 Cal.App.2d 408, 417 [120 P.2d 97].) It does not appear that the court abused its discretion. The question as to whether decedent was an employee of Rahenkamp had been answered by Rahenkamp's admission that he employed decedent. The question as to whether decedent was an employee of Star did not relate to a matter in controversy, as above shown—no party was contending that decedent was employed by Star.

The notice of appeal states that Star also appeals from the order denying its motion for a nonsuit. Such an

order may be reviewed on appeal from the judgment. ▇ The court did not err in denying the motion.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for rehearing was denied April 8, 1964, and appellant's petition for a hearing by the Supreme Court was denied May 13, 1964.