[S.F. No. 23231. In Bank. May 5, 1975.]

MARIA D. GANSCHOW, Plaintiff and Respondent, v.
MARTIN E. GANSCHOW, Defendant and Appellant.

**COUNSEL**

N. Perry Moerdyke, Jr., and Fred W. Armstrong for Defendant and Appellant.

Richard M. McGowen for Plaintiff and Respondent.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Gloria F. DeHart and Alvin J. Knudson, Deputy Attorneys General, Jack F. Bonanno and Keil, Connolly & Barbieri as Amici Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**SULLIVAN, J.**—By statute effective March 4, 1972, California reduced the age of majority from 21 years to 18 years of age. This scheme of

legislation also provides, among other things, that such statutory reduction of the age of majority nevertheless has no effect upon orders for child support entered prior to the effective date of the statutory change, which orders, unless otherwise modified by the appropriate court, may be continued in effect until the child attains the age of 21 years.

In these proceedings to enforce such an order for the support of a child who has attained the age of 18 years, we must decide whether the applicable statute contravenes constitutional requirements of equal protection of the laws insofar as it distinguishes between obligations of parents for child support solely on the basis of whether the obligation has been set forth in an order entered prior to the change in the age of majority. We must determine whether there is a constitutionally permissible distinction between such court-ordered obligations for child support which may continue until the age of 21 years and all other obligations for child support which terminate at 18 years. We conclude that the distinction does not offend equal protection principles. We affirm the order appealed from.

Plaintiff and defendant were divorced in 1967. There were two children born of their marriage—Deborah J. Ganschow, born September 3, 1952, and Martin E. Ganschow, born January 7, 1957. In the interlocutory judgment of divorce entered on January 23, 1967, the court awarded custody of the children to plaintiff subject to reasonable visitation rights in defendant and ordered defendant to pay "to Plaintiff the sum of $100 per month for the support of each . . . child, . . . payable monthly on the 1st day of November, 1966, and continuing each month until their respective majorities, unless sooner married or self supporting, or until further Order of the Court." The above provision was incorporated by reference into the final judgment of divorce, entered on October 3, 1967.

Defendant complied with the terms of this order until March 4, 1972, when he ceased making payments for the support of Deborah, who was then 20 years old. Plaintiff thereupon instituted the instant contempt proceedings alleging that defendant's failure to make these support payments constituted a wilful violation of the terms of the divorce decree. The court issued an order to show cause re contempt. At the ensuing hearings, defendant admitted his failure to make the support payments for Deborah but asserted that his obligation had been terminated by operation of law on March 4, 1972, the effective date of

the legislation changing the age of majority from 21 years to 18 years, since Deborah was over 18 as of that date. In rejecting defendant's argument, the court relied upon the provisions exempting from the above change support orders entered prior to March 4, 1972. The court found no merit in defendant's claim that this statutory provision violates equal protection of the laws insofar as it distinguishes between child support obligations solely on the basis of whether or not they are set forth in court orders entered prior to March 4, 1972.

In its order entered on July 17, 1972, the court adjudged defendant not in contempt of court for failure to pay child support for Deborah, ordered him to pay $490 for arrearages in child support, and modified the interlocutory and final judgments of divorce to provide that defendant's support obligation to Deborah was to continue until May 1973, provided she remained in college during the interim period.[1] Defendant appeals from the order.

Defendant contends before us, as he did below, that the statute upon which the trial court relied in refusing to terminate his support obligation violates the equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution and by article I, section 7, of the California Constitution.

We initially discuss the background of the relevant legislation. Effective March 4, 1972, the Legislature amended Civil Code section 25 to provide that "[m]inors are all persons under 18 years of age."[2] This amendment was embodied in section 23, chapter 1748, of the Statutes of 1971. At the same time, the Legislature modified numerous other statutory provisions to refer to the new age of majority.[3] Among the provisions so modified were those imposing parental support obligations, which would thereafter terminate as a child reached the age of 18, absent special circumstances.[4]

---

[1]As previously stated, under the terms of the original order, defendant was required to support Deborah until she became 21 (on Sept. 3, 1973), unless she sooner married or became self-supporting, or unless otherwise ordered by the court.

[2]Hereafter, unless otherwise indicated, all section references are to the Civil Code.

[3]For a list of these provisions, see chapter 1748, Statutes of 1971.

[4]Section 242 provides that "[e]very man shall support his . . . child . . . ." Section 243 imposes this same obligation upon women. Section 241, subdivision (d), defines "child" for purposes of these statutes to mean "a son or daughter under the age of 18 years and a son or daughter of whatever age who is incapacitated from earning a living and without sufficient means." Section 241 was amended by section 25.5 of chapter 1748 of the Statutes of 1971 (effective Mar. 4, 1972) by the substitution of the phrase "18 years" for

The controversy presented in the case at bench arises out of the fact that one statutory exception has been created to this general scheme adjusting parental liability for support to reflect the new age of majority. As part of the package of laws terminating minority at 18, the Legislature enacted a provision (Stats. 1971, ch. 1748, § 73) stating in relevant part as follows: "In any order or direction of a court entered before the operative date of this act, *except orders or directions of a court affecting child support,* and in the absence of any indication of an intention to the contrary, a reference to the age of majority or the age of 19 years of age, 20 years of age, or 21 years of age shall be deemed to be a reference to 18 years of age.

"The use of the words the age of majority, 19 years of age, 20 years of age, or 21 years of age in such an order or direction shall not, in itself, be deemed to indicate a contrary intention without some further indication of a contrary intention.

*"In any order or direction of a court affecting child support entered prior to the effective date of this act, a reference to minority shall be deemed a reference to the age of 21 years."* (Italics added.)

Anticipating that the above section might cause confusion, the Legislature repealed the provision (see Stats. 1972, ch. 38, § 1) and enacted in its place section 4 of chapter 38 of the Statutes of 1972, which we set forth in the margin.[5] The provisions of section 4 (Stats. 1972, ch.

---

"21 years" in the definition of "child." Thus, as of the effective date of this legislation, a parent's legal responsibility to provide for the support of his or her offspring terminates, as a general rule, when the child attains the age of 18 years.

Furthermore, a court entering a support order after March 4, 1972, may not provide for continuation of the obligation past the new age of majority. In actions brought to annul or dissolve a marriage, the court has jurisdiction to "make such orders as are appropriate concerning ... the custody and support of *minor* children of the marriage ...." (§ 4351, italics added; see also § 4453.) Section 4700, the basic child support statute, similarly provides in relevant part that "[i]n any proceeding where there is at issue the support of a *minor* child, the court may order either or both parents to pay any amount necessary for the support, maintenance, and education of the child." (Italics added.)

A parent may be required to support an adult child only when such child is "in need" and "unable to maintain himself by work." (§ 206.) In the instant case, there has been no finding, nor does plaintiff assert, that Deborah is "in need" and "unable to maintain herself by work."

[5]Section 4 of chapter 38 stated in explicit terms that "[t]he Legislature intends that any use of or reference to the words 'age of majority,' 'age of minority,' 'adult,' 'minor,' or words of similar intent in any instrument, order, transfer, or governmental communication whatsoever made in this state:

"(a) Before the effective date of Chapter 1748 of the Statutes of 1971, shall make reference to persons older or younger than 21 years of age, and

38) were added to the Civil Code (§ 25.1) by chapter 278 of the Statutes of 1973, effective January 1, 1974.[6]

---

"(b) On or after the effective date of Chapter 1748 of the Statutes of 1971, shall make reference to persons older or younger than 18 years of age.

"Nothing contained herein or in Chapter 1748 of the Statutes of 1971 shall prevent the amendment of any court order, will, trust, contract, transfer, or instrument to refer to the new 18-year-old age of majority where such court order, will, trust, contract, transfer, or instrument is:

"(1) In existence on the effective date of Chapter 1748 of the Statutes of 1971; and

"(2) Subject to amendment by law and where amendment is allowable or not prohibited by the terms thereof; and

"(3) Otherwise subject to the laws of this state."

To qualify this statute for immediate effectiveness under article 4, section 8, of the California Constitution, section 3 of chapter 38 (Stats. 1972) provided as follows:

"This act is an urgency statute necessary for the immediate preservation of the public peace, health or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The facts constituting such necessity are:

"It has come to the attention of the Legislature since passage of A.B. 2887 (now Chapter 1748 of the Statutes of 1971) that there were and are thousands of court orders outstanding in this state referring to 'age of majority' or to the ages of 19, 20, or 21. It is now apparent that great confusion will be caused within the judicial system and among California citizens unless it is made clear that all outstanding court orders remain unamended and unaffected by Chapter 1748 of the Statutes of 1971 and to further make clear that these court orders may be amended to reflect the new age of majority where such amendment is proper in the discretion of the courts under California law or by the terms of the outstanding court orders. Likewise, it is thought prudent to expressly indicate the intention of the Legislature that any instrument outstanding on the effective date of the new law may be amended if otherwise permissible or not prohibited by the law or its own terms."

[6]Section 2 of chapter 278 of the Statutes of 1973 repealed section 4 of chapter 38 of the Statutes of 1972.

Section 25.1 is substantially identical to section 4 of chapter 38 of the Statutes of 1972. Section 25.1 provides as follows: "The Legislature intends that any use of or reference to the words 'age of majority,' 'age of minority,' 'adult,' 'minor,' or words of similar intent in any instrument, order, transfer, or governmental communication whatsoever made in this state:

"(a) Before March 4, 1972, shall make reference to persons 21 years of age and older, or younger than 21 years of age, and

"(b) On or after March 4, 1972, shall make reference to persons 18 years of age and older, or younger than 18 years of age.

"Nothing contained herein or in Chapter 1748 of the Statutes of 1971 shall prevent the amendment of any court order, will, trust, contract, transfer, or instrument to refer to the new 18-year-old age of majority where such court order, will, trust, contract, transfer, or instrument is:

"(1) In existence on March 4, 1972; and

"(2) Subject to amendment by law and where amendment is allowable or not prohibited by the terms thereof; and

"(3) Otherwise subject to the laws of this state."

Although section 4 of chapter 38 (Stats. 1972) was the provision in effect at the time this case was initially decided by the trial court, we will refer to the statute whose validity is challenged as section 25.1, since the terms and operative effect of these two statutes are for all practical purposes identical.

To further clarify its intent, the Legislature enacted section 4704 (ch. 81, § 1, Stats. 1974). Under the terms of this statute, "(a) Any order issued prior to March 4, 1972, providing for support for a child may be amended or modified by the court having jurisdiction to increase or decrease the amount of such award without terminating such award at the age of majority based on 18 years of age. [¶] (b) This section does not constitute a change in, but is declaratory of, the existing law."

These provisions make the legislative intent crystal clear.██ ▌ Thus, nearly all courts which have been called upon to interpret section 25.1 and its predecessors have properly held that a child support order entered prior to March 4, 1972, is not affected by the new age-of-majority legislation per se but where subject to amendment may refer in any modification thereof to the new 18-year-old age of majority. (See *In re Marriage of Crookshanks* (1974) 41 Cal.App.3d 475, 479 [116 Cal.Rptr. 10]; *In re Marriage of Phillips* (1974) 39 Cal.App.3d 723, 728 [114 Cal.Rptr. 362][7]; *Atwell v. Atwell* (1974) 39 Cal.App.3d 383, 388 [114 Cal.Rptr. 324].[8])[9] The fact that the child has attained the age of 18 years is merely one of the factors to be considered by the court in deciding whether to increase, decrease or terminate a parent's liability under a pre-effective date order. (*Atwell v. Atwell, supra,* 39 Cal.App.3d at p. 388.)

[7]In *Phillips, supra,* the court held that a pre-March 4, 1972, support decree, expressly providing that it was to continue until each child "shall become self-supporting, *emancipated,* married, deceased or *reaches the age of 21 years* . . .", terminated by its own terms when the child involved was emancipated upon reaching the age of 18. (39 Cal.App.3d at p. 725, italics added.) In so holding, the court distinguished a support obligation expressly made terminable upon emancipation as well as upon majority from one made terminable upon majority alone, and found that only the latter fell within the sweep of legislation continuing child support under a pre-March 4, 1972, order to age 21 or until modified. (*Id.* at p. 728.)

We find no basis in the language of section 25.1 or its predecessors to support the distinction drawn by the *Phillips* court. Furthermore, the decision contravenes the legislative intent, as expressed in the statement of urgency accompanying the enactment of section 4 of chapter 38 (Stats. 1972) (see fn. 5, *supra*) to the effect that "all outstanding court orders [are to] remain unamended and unaffected by Chapter 1748 of the Statutes of 1971 . . . [unless] amended to reflect the new age of majority where such amendment is proper in the discretion of the courts under California law or by the terms of the outstanding court orders." We therefore disapprove *In re Marriage of Phillips, supra,* 39 Cal.App.3d 723, insofar as it is inconsistent with the views herein expressed.

[8]In *Atwell, supra,* the court properly rejected the argument that a pre-March 4, 1972, support order modified after the effective date of the age-of-majority legislation becomes an order or decree entered after March 4, 1972, and hence automatically terminates as the child reaches the age of 18. Sections 25.1 and 4704 clearly indicate that this was not the result intended by the Legislature.

[9]A number of courts in other jurisdictions have construed similar statutory provisions in a like manner. See, for example, *Vicino v. Vicino* (1972) 30 Conn. Supp. 49 [298 A.2d 241, 242-244], and *Monticello v. Monticello* (1974) 271 Md. 168 [315 A.2d 520, 521, 523].

■ The overall result is the creation by section 25.1 of two classifications of child support obligations. One classification embraces those obligations based upon court orders entered prior to March 4, 1972, which orders may continue in effect until the child reaches the age of 21 years. The second classification embraces all those child support obligations *not embodied in pre-March 4, 1972, orders, which obligations* terminate when the child attains the age of 18 years. This second category includes the obligations of parents who remain married and whose support liability is based upon statute alone (§§ 241, 242, 243), as well as the obligations of parents based on court orders initially entered *after* March 4, 1972 (§§ 4351, 4453, 4700).

■ In considering defendant's equal protection attack upon section 25.1, we begin by determining the appropriate test to be used by this court in judging the constitutional validity of the statute. We note that the provision neither involves a suspect class nor touches upon a fundamental right. (See, e.g., *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 597 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187].) Rather, the interest of both parents affected by the legislation is a monetary one—the parent entitled to receive payments on the child's behalf seeking to enforce and continue an award for its support, the other parent obligated under a prior order to pay such support seeking to terminate his or her liability. We therefore must apply "the basic and conventional standard for reviewing economic and social welfare legislation in which there is a 'discrimination' or differentiation of treatment between classes or individuals. It manifests restraint by the judiciary in relation to the discretionary act of a co-equal branch of government; in so doing it invests legislation involving such differentiated treatment with a presumption of constitutionality and 'requir[es] merely that distinctions drawn by a challenged statute bear some rational relationship to a conceivable legitimate state purpose.' [Citation.] . . . Moreover, the burden of demonstrating the invalidity of a classification under this standard rests squarely upon *the party who assails it.* [Citations.]" (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 16-17 [112 Cal.Rptr. 786, 520 P.2d 10]; original italics.)

■ Subjecting the statute here under attack to this rational relationship test, we encounter little difficulty in discerning a conceivable legitimate interest promoted by the provision. In reducing the age of majority from 21 to 18 years of age, the Legislature may well have been concerned with the effect this would have on outstanding court orders for child support entered in litigation upon the reasonable anticipation both by the parties and the court that the obligation to support would

continue until the child reached 21 years of age. (See fn. 5, *ante.*) In other words, it could have been reasonably considered by the Legislature that the parties and the court, contemplating such a probable terminal date, might well have taken into account this factor of a continuing liability in arriving at the amount of child support in the order and in making a corresponding adjustment in the property rights of the parties, in the award of spousal support and in any other obligation imposed by the court. Despite the absence of a formal property settlement agreement, it could reasonably be assumed that in such instances the potential duration of the obligation for child support might have affected the financial arrangements as a whole and the court's judgment carrying them out.[10] With this consideration in mind, the Legislature could reasonably have intended to protect the expectations of the parties in those cases in which child support orders had already been entered by permitting such orders to remain in effect to the same extent as if no statutory reduction in the age of majority had taken place. (*Atwell* v. *Atwell, supra,* 39 Cal.App.3d 383, 388.)

Having satisfied ourselves as to this conceivable legitimate state purpose underlying section 25.1, we are convinced that the two classifications of child support obligations created by the statute on the basis of whether or not they are embodied in a court order entered prior to March 4, 1972, are entirely rational and clearly designed to effectuate the legislative objective. Where there has been no child support order before the critical date, the potential duration of the parent's liability has not influenced a formal adjustment of property and support rights and obligations. Furthermore, if an interlocutory judgment of dissolution has

---

[10]This seems particularly plausible in light of the factors which a court must consider in determining the amount of a support order. These factors include: "(a) The standard of living and situation of the parties; (b) The relative wealth and income of the parties; (c) The ability of the obligor to earn; (d) The ability of the obligee to earn; (e) The need of the obligee; (f) The age of the parties; (g) The responsibility of the obligor for the support of others." (§ 246.) (See 6 Witkin, Summary of Cal. Law (8th ed. 1974) p. 4643; see also, *In re Ricky H.* (1970) 2 Cal.3d 513, 521 [86 Cal.Rptr. 76, 468 P.2d 204], and *Caldwell* v. *Caldwell* (1962) 204 Cal.App.2d 819, 821 [22 Cal.Rptr. 854].)

On the basis of similar reasoning, the Appellate Court of Illinois determined that legislation lowering the age of majority from 21 to 18 did not affect a support decree entered prior to its effective date, even in the absence of an express statutory exemption for such orders. (*Waldron* v. *Waldron* (1973) 13 Ill.App.3d 964 [301 N.E.2d 167, 170-171].) In so holding, the court stated: "[I]t has long been a rule of construction in determining the meaning of judgments or decrees that one must examine the situation as it existed at the rendition of the judgment. [Citation.] The situation as it existed at the rendition of the divorce decree included a statutory provision that the age of majority for males was twenty one years. It was twenty one, and not eighteen, that was the reference point at that time for determining what was meant by 'minor' children." *(Id.)* (See also, *Baker* v. *Baker* (1972) 80 Wn.2d 736 [498 P.2d 315, 319].)

been entered after March 4, 1972, the parties and the court, manifestly aware of the new age of majority, have been able to give it due consideration in arriving at a just and proper adjudication of property rights and spousal and child support obligations. It is only when such an accommodation of the various property and support interests at stake in the divorce or dissolution proceedings has taken place prior to March 4, 1972, that the legitimate purpose of section 25.1 is furthered by allowing a parent's support liability to continue until the former age of majority.

Therefore, the classification created by section 25.1 is rational " 'in the nature of the class singled out' [citations]," " ' "rest[s] upon some ground of differences having a fair and substantial relation to the object of the legislation . . ." '[citations]" (italics omitted), and insures that " 'persons similarly situated with respect to the legitimate purpose of the law receive like treatment.' [Citations.]" (*Brown* v. *Merlo* (1973) 8 Cal.3d 855, 861 [106 Cal.Rptr. 388, 506 P.2d 212].)

Defendant fails to persuade us to the contrary. His principal contention is that in lowering the age of majority to 18 years and in making this change applicable to most child support obligations, the Legislature determined that as a general rule, a child becomes capable of self-support upon attaining the age of 18. Accordingly he argues that *all* parents and children are similarly situated with respect to the legislative purpose underlying the modified support statutes and therefore must receive like treatment.

We find defendant's equal protection analysis faulty in several respects. In the instant case, we are called upon to determine the constitutional validity of section 25.1, the statute which singles out one group of parents and children for special treatment. It is true that we "must judge the enactment's operation against the background of other legislative, administrative and judicial directives which govern the legal rights of similarly situated persons" (*Brown* v. *Merlo, supra,* 8 Cal.3d at p. 862), since in this manner we are able to discern what classifications are imposed by the legislation under attack. However, having identified the different treatment complained of, we are required to determine whether there is a conceivable legitimate state interest underlying the particular statute in question and to decide whether the classifications created are rationally related to the furtherance of such interest.

As we have explained, we have concluded that there is a rational basis for distinguishing pre-March 4, 1972, child support orders from other

child support obligations and for permitting such orders to continue in effect, unless otherwise modified, until the child reaches the age of 21 years. The fact that in a particular case the child is able to support himself or herself fully or partially upon attaining the age of 18 years, may justify a modification or termination of the support order. But the statutory reduction of the age of majority does not ipso facto warrant the same result.

Nor is there any merit in defendant's argument that section 25.1 must be struck down because the beneficiaries of child support orders entered before March 4, 1972, have no vested rights in them. The argument seems to be launched from our opinion in *Rosher v. Superior Court* (1937) 9 Cal.2d 556 [71 P.2d 918], in which we held that legislation *raising* the age of majority for females from 18 to 21 years could be properly applied to extend the child support obligation of a father under a decree of divorce entered prior to the effective date of such legislation. In so holding, we rejected the father's claim that a support order is "a judgment in the sense of its being a final adjudication of the rights and duties of the parent and the minor child." (*Id.* at p. 559.) Noting that such orders are subject to judicial modification and are made "in the light of the power of the state to change the period of minority" (*id.* at p. 560), this court held that no "vested right with regard to his duty to support or care for his minor children is acquired by a divorced parent as a result of the divorce decree or custody orders made in connection therewith." *(Id.)*

Thus, under the rationale of *Rosher,* it may be argued that the enactment of section 25.1 was not *compelled* by federal or state constitutional proscriptions against either the impairment of contractual obligations (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9), or against the deprivation of vested property interests without due process of law. (U.S. Const., 14th Amend.; Cal. Const., art. I, §§ 7, 15.) It was constitutionally *permissible* to reduce the age of majority from 21 to 18 years and to make the reduction effective as to pre-existing child support orders. But contrary to defendant's claim, it does not follow that merely because the protection afforded by the Legislature of the expectations of the parties in pre-March 4, 1972, child support orders is not constitutionally *required,* such protection is constitutionally *prohibited. Rosher* does not consider the latter issue, and defendant's reliance on it for that point is entirely misplaced.

To recapitulate, we hold that since section 25.1 promotes a legitimate state interest and since the classifications created by this provision are rationally related to the furtherance of this interest, the statute satisfies the equal protection requirements of the Fourteenth Amendment to the United States Constitution and of article I, section 7, of the California Constitution.

The order is affirmed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Clark, J., and Richardson, J., concurred.

Appellant's petition for a rehearing was denied June 4, 1975, and the opinion was modified to read as printed above.