[Civ. No. 48297. Second Dist., Div Five. Aug. 24, 1976.]

SHIRLEY E. MALOUIN, Plaintiff and Respondent, v.
JOSEPH A. MALOUIN, Defendant and Appellant.

454

**COUNSEL**

Clifton A. Hix and Elizabeth Hix for Defendant and Appellant.

Timothy M. O'Connor for Plaintiff and Respondent.

**OPINION**

**HASTINGS, J.**—The important facts are not in dispute: an interlocutory judgment of divorce entered September 8, 1969, granted Shirley E. Malouin (wife) a decree of divorce and awarded her a property settlement plus $850 per month child support for two children for 10 months; then $325 per month per child, payable on the first of each month and continuing thereafter on the first of each successive month until each child obtained majority. On March 26, 1970, the interlocutory judgment was modified in accordance with a stipulation of the parties

whereby Joseph A. Malouin (husband) was ordered to continue to pay to wife as and for the support of the minor child Daniel, born June 7, 1957, the sum of $475 per month, and continuing thereafter until August 1, 1970, at which time the payment was to be reduced to the sum of $375 per month; and continuing thereafter until said child attained majority. The same order awarded custody of James Peter Malouin, the other minor child, to husband.

On March 4, 1972, Civil Code section 25 went into effect, lowering the age of majority to 18 years. On December 7, 1972, the court, after a contested hearing, made the following order: "The order of April 1, 1970[1] is modified as to the following particulars only: Respondent [husband] shall pay to petitioner [wife] for the support of Daniel Joseph $275.00 per month on the 1st day of each month commencing January 1, 1973, and continuing . . . until the child attains the age of majority." To clarify its intent on pre-March 4, 1972, child support orders, the Legislature enacted Civil Code sections 25.1 (effective Jan. 1, 1974)[2] and 4704 (effective Jan. 1, 1975).[3]

Daniel became eighteen years of age June 7, 1975, three years and three months after the effective date of section 25 and two and one-half years after the court order of December 7, 1972.

[1] The date of entry of the March 26, 1970 order.

[2] Civil Code, section 25.1 provides as follows:

"The Legislature intends that any use of or reference to the words 'age of majority,' 'age of minority,' 'adult,' 'minor,' or words of similar intent in any instrument, order, transfer, or governmental communication whatsoever made in this state:

"(a) Before March 4, 1972, shall make reference to persons 21 years of age and older, or younger than 21 years of age, and

"(b) On or after March 4, 1972, shall make reference to persons 18 years of age and older, or younger than 18 years of age.

"Nothing contained herein or in Chapter 1748 of the Statutes of 1971 shall prevent the amendment of any court order, will, trust, contract, transfer, or instrument to refer to the new 18-year-old age of majority where such court order, will, trust, contract, transfer, or instrument is:

"(1) In existence on March 4, 1972; and

"(2) Subject to amendment by law and where amendment is allowable or not prohibited by the terms thereof; and

"(3) Otherwise subject to the laws of this state."

[3] Civil Code, section 4704 provides as follows:

"(a) Any order issued prior to March 4, 1972, providing for support for a child may be amended or modified by the court having jurisdiction to increase or decrease the amount of such award without terminating such award at the age of majority based on 18 years of age.

(b) This section does not constitute a change in, but is declaratory of, the existing law."

A short time prior to July 1, 1975, husband notified wife he was discontinuing child support payments for Daniel because he had obtained majority on June 7, 1975, but that he would voluntarily pay $150 per month to assist in the boy's education. Thereafter, wife obtained a writ of execution for the sums accruing after the June 1, 1975, payment, and levied on husband's salary. Husband filed notice of motion to quash writ of execution and for order terminating child support on the ground and for the reason that Daniel Joseph had attained majority (18 years of age) on June 7, 1975. On October 22, 1975, the court made its order denying husband's motion to quash writ of execution and order terminating child support.

ISSUE

Husband states the issue as follows: When an order made after the effective date of Civil Code section 25[4] in a child custody matter modifies a judgment and provides for termination at the "age of majority," does it refer to the age of 18 or to the age of 21?

DISCUSSION

In *Ganschow* v. *Ganschow,* 14 Cal.3d 150 [120 Cal.Rptr. 865, 534 P.2d 705], the court discussed in detail the effect of the March 4, 1972, legislation (reducing majority to 18 years) and Civil Code sections 25.1 and 4704 on child support orders entered before that date. It clarified the fact that the Legislature did not necessarily intend the new law to change child support orders made *before* March 4, 1972, that ordered payments to continue after the child was 18. And pre-March 4, 1972, support orders requiring payments to continue until "majority" placed that obligation on the parent until the child reached age 21. In *Atwell* v. *Atwell,* 39 Cal.App.3d 383 [114 Cal.Rptr. 324], (cited with approval by *Ganschow*) the court said on page 388: "Our decision that child support does not automatically terminate upon age 18 is consistent with sound public policy. Pre-March 4, 1972, orders were made with the view that such support orders might continue until age 21. The mother and child may have made certain educational or other plans based on that expectation, and depending on circumstances in each individual case, the court might feel it would be unjust to adopt the new 18-year-old as majority rule."

---

[4]Husband in his appellate brief cited section 25.1 here. He was in error because the section was enacted after the order of modification. However it does not change the substance of the issue.

*Atwell* was also concerned with a pre-March 4 child support order that was modified after said date. The child involved was over 18 when the trial court ordered payments reduced to $200 per month. Husband thereafter filed an O.S.C. to terminate the payments, contending inter alia that the later order took place after the statute had lowered the age of majority. The trial court ruled that this later order had the effect of terminating child support because it took effect after the new legislation. This court (Division Four) disagreed, stating that the Legislature did not intend that child support orders in effect on March 4, 1972, should be affected by the new age-of-majority legislation.

In *Wodicka* v. *Wodicka,* 17 Cal.3d 181 [130 Cal.Rptr. 515, 550 P.2d 1051], the original child support order (interlocutory judgment of divorce) of $70 per month per child was made on October 18, 1965. On July 5, 1972, the order was modified to $125 per month "until further order of the court, or until the child reaches majority, dies, becomes emancipated, or marries." The child (Kimberly) reached 18 years of age on March 22, 1974. On March 13, 1974, plaintiff moved for an increase in child support. Defendant opposed the motion, claiming the July 5, 1972 order terminated child support at age 18. The trial court disagreed and increased the child support to $150 per month ". . . until further order of the Court or until said child reaches the age of twenty-one. . . ." On August 1, 1974, defendant moved to terminate child support on the ground that the child had become emancipated by operation of law at age 18. The trial court granted the motion. Our Supreme Court reversed. After reviewing *Ganschow,* it stated at page 187: "Defendant insists that despite our holding in *Ganschow,* since the modification order of July 5, 1972, required support payments 'until the child reaches her majority,' and since at the time such order was made 'age of majority' was legislatively defined as referring to persons 18 years of age and older, the provisions for Kimberly's support became subject to the new age-of-majority legislation. This argument is patently incompatible with Civil Code section 4704 and the rule of law as expressed in *Ganschow.* The interlocutory judgment of divorce which contained the original order for child support and constitutes the basis for the instant proceedings was entered in 1965 and provided for continuous support of the minor children until they reached 21 years. [Fn. omitted.] Any subsequent modification after the change in legislation could, but was not required to, refer to the new age of majority. (See Civ. Code, § 25.1 and *Atwell* v. *Atwell* (1974) 39 Cal.App.3d 383 [114 Cal.Rptr. 324].)"

## DISPOSITION

■ Husband argues that any order modifying child support (where the child is under 18 at the time) after March 4, 1972, which terminates support at "age of majority" (or words of similar import), refers to age 18 as a matter of law by reason of Civil Code section 25.1. Husband contends that *Atwell* and certain portions of *Ganschow* are not controlling here because the children in those cases were over the age of 18 when the orders of modification were made.[5] He disagrees *Wodicka* is controlling for technical reasons. We agree that these three cases are not directly in point (although *Wodicka* is very close); they do, however, set the standards for determining this case. To begin with, it is undeniable that husband was ordered by the original judgment to pay support until the child reached the age of 21, unless modified by the court to a lower age. The age of majority was well known to all parents at that time, so husband was clearly charged with knowledge of this fact. When husband went into court to modify child support he knew or should have known that the age of majority had been reduced to 18 years yet he did not specifically raise this issue. The court modified the child support by reducing it to $275, but it also incorporated the exact language of the original order, to wit: ". . . and continuing . . . until the child attains the age of majority, marries, becomes self-supporting or until further order of court." We do not question the fact that the court could have terminated the child support at age 18 had it determined this was appropriate. *Ganschow* specifically said: "The fact that the child has attained the age of 18 years is merely one of the factors to be considered by the court in deciding whether to increase, decrease or terminate a parent's liability under a pre-effective date order." (Citing *Atwell, supra,* at p. 388.) Husband argues this statement of the law does not apply to his case because Daniel had not reached 18 years of age when the modification order was made. In *Wodicka,* however, this contention is answered because the July 5, 1972, modification was also made before the child (Kimberly) was 18. In ruling that the award to "majority" meant age 21, the court, in referring to the last order increasing the support to $150, said: "The court's order that child support was to continue until Kimberly reached 21 years of age *was a determination that the word 'majority' in the July 5, 1972, order meant 21 years.*" (Italics added.) (*Wodicka* v. *Wodicka, supra,* 17 Cal.3d 181, 189.)

---

[5]Husband contends *Ganschow* aids his argument because it specifically states the new legislation only concerned itself with pre-March 4, 1972, orders, whereas he has a post-March 4, 1972, order.

It is our opinion that the court, in its December 7, 1972, order intended only to modify the amount of child support and not its date of termination. The record is devoid of any facts or evidence that would indicate the judge considered this issue when he modified the amount of support. In the absence of such consideration, the reasons for continuing the support to age 21 as spelled out in *Ganschow, Atwell,* and *Wodicka* are very persuasive.

The trial court that refused to quash the writ of execution was of the same opinion. It said, referring to *Ganschow*: ". . . And it appears to the court that that section makes it a discretionary matter with the court. And if my interpretation is correct, that it is discretionary based upon the language of Ganschow, based upon the language of the 1974 amendment, then there would appear to be a requirement—or at least this court should require a showing of change in circumstances before it would consider a change in the child support payments that have heretofore been ordered, whether it be an increase, decrease, or termination." The court concluded: "I believe that reading the section, the Ganschow case, that there is no requirement that the court terminate the child support at 18. There is no showing here of any reason to terminate, other than the fact that he is now 18 years of age."

The order denying the motion to quash the writ of execution and to terminate child support is affirmed.

Kaus, P. J., and Ashby, J., concurred.