[Civ. No. 46752. First Dist., Div. One. Oct. 1, 1981.]

PAUL R. SALINERO, Plaintiff and Appellant, v.
HAROLD L. PON et al., Defendants, Cross-complainants and
Respondents;
GENE W. LAM, Cross-defendant and Respondent.

**COUNSEL**

Keith & Duryea, Maxwell Keith and James Duryea, Jr., for Plaintiff and Appellant.

Robert E. Jensen, Robert B. Lueck, Boornazian, King, Jensen & Garthe and Boornazian, Jensen & Garthe for Defendants, Cross-complainants and Respondents.

Stark, Stewart & Simon, Richard B. Beauchesne and R. Gordon Baker, Jr., for Cross-defendant and Respondent.

OPINION

NEWSOM, J.—This is an appeal from a summary judgment dismissing appellant's personal injury action against respondent Gene W. Lam, and a judgment entered upon a subsequent motion for nonsuit in favor of respondents Harold L. and Anna R. Pon, owners of the building, in the same action. The pertinent facts are as follows.

The Pons are owners of a five- and six-story apartment building containing 21 rental units located at 269 Hanover Street, Oakland, purchased by them in 1971. The building was designed by respondent Lam, an architect, and completed in 1969.

In July 1975, Mrs. Pon requested bids for the cleaning of the apartment building windows. She received three bids for the job, and accepted that of Crosetti and Musante, appellant's employer. A formal written contract was subsequently executed.

Mrs. Pon discussed the job with Mr. Crosetti, and it was agreed between them that (1) the windows could not be washed from the inside, and (2) there were no bolts, hooks or other devices on the building from which the window washers could be suspended for the purpose of washing the windows from the outside. Consequently, it was agreed that the' windows would be washed by means of a ladder extended over the edge of the building roof from which the workers would be suspended in a boatswain's chair secured to the roof by a weighted sand bag.

Appellant and his partner, Robert Goodrich—both experienced window washers—were assigned by Mr. Crosetti to wash the windows at the Pons' building on August 5, 1975. Prior to the commencement of work, Mrs. Pon discussed the job with appellant; according to appellant, she expressed some concern that "there was nothing to tie down ... [the window washers'] rigs on the roof."[1] However, Mrs. Pon was as-

---

[1]Appellant's expert, Allen F. Rosenberg, testified at trial that generally safety devices such as hooks, bolts or offset pivot hinges (which allow windows to be washed from the inside), are installed on buildings similar to the Pons' as a safety measure to protect window washers.

sured by both Mr. Crosetti and appellant that the job could be safely done.

The accident which is the subject of this litigation occurred while appellant was suspended in a boatswain's chair from a ladder-headpiece while washing windows on the fourth floor, approximately 35-40 feet above ground level. Goodrich, who had been working on another portion of the building, was on the roof for the purpose of moving his ladder-headpiece. He intended to remove the sand-filled bucket anchoring his ladder, but by mistake removed the weights from appellant's ladder instead of his own, causing appellant to fall to the ground.

█ Appellant's first argument challenges the trial court's order granting summary judgment in favor of architect Lam. It is appellant's position that section 337.1 of the Code of Civil Procedure, upon which the trial court relied in ruling that the action against Lam was barred by the four-year statute of limitations, is unconstitutional because it arbitrarily grants a special privilege to a class of persons—architects and construction contractors—by affording them immunity from suit based solely upon lapse of time from performance, unrelated to notice or date of injury.[2] Appellant sees no rational basis for this special treatment.

█ Respondent Lam insists that appellant has no standing to assert the unconstitutionality of section 337.1, since he was made a party to this action not by appellant's complaint, but by the Pons' cross-complaint. Thus, respondent argues, appellant was not "aggrieved" by the summary judgment dismissing the cross-complaint against Lam as required by section 902 of the Code of Civil Procedure. (*County of Alameda* v. *Carleson* (1971) 5 Cal.3d 730, 736 [97 Cal.Rptr. 385, 488 P.2d 953]; *Kunza* v. *Gaskell* (1979) 91 Cal.App.3d 201, 206 [154 Cal.Rptr. 101].)

We conclude, contrary to Lam's claim, that appellant is entitled to argue the unconstitutionality of section 337.1 in this appeal. At least

---

[2]Section 337.1 provides, in pertinent part: "(a) Except as otherwise provided in this section, no action shall be brought to recover damages from any person performing or furnishing the design, specifications, surveying, planning, supervision or observation of construction or construction of an improvement to real property more than four years after the substantial completion of such improvement for any of the following: [¶] (1) Any patent deficiency in the design, specifications, surveying, planning, supervision or observation of construction or construction of an improvement to, or survey of, real property; [ ¶] (2) Injury to property, real or personal, arising out of any such patent deficiency; or [¶] (3) Injury to the person or for wrongful death arising out of any such patent deficiency."

before summary judgment was granted, appellant retained the option of substituting Lam for a doe defendant by amendment of the complaint. The trial court's ruling thus adversely affected appellant's right to pursue his cause of action against Lam, given the application of res judicata or collateral estoppel principles to bar any subsequent action by appellant against Lam. As noted in *Short v. State Compensation Ins. Fund* (1975) 52 Cal.App.3d 104, at p. 107 [125 Cal.Rptr. 15], if "prohibited from proceeding further herein, appellant would ... suffer the inequity of being bound by the decision without any right of review." (See also *Rodriguez v. McDonnell Douglas Corp.* (1978) 87 Cal.App.3d 626, 650 [151 Cal.Rptr. 399].)

■ Turning to the merits of appellant's argument, we note that section 337.1 is a mere "economic regulation" since it touches neither upon a suspect class nor a fundamental right. "'In the area of economic regulation, the high court has exercised restraint, investing legislation with a presumption of constitutionality and requiring merely that distinctions drawn by a challenged statute bear some rational relationship to a conceivable legitimate state purpose.'" (*Wagner v. State of California* (1978) 86 Cal.App.3d 922, 929 [150 Cal.Rptr. 489].) (See *Schwalbe v. Jones* (1976) 16 Cal.3d 514, 517-518 [128 Cal.Rptr. 321, 546 P.2d 1033]; *Agricultural Labor Relations Bd. v. Superior Court* (1976) 16 Cal.3d 392, 410 [128 Cal.Rptr. 183, 546 P.2d 687]; *Ganschow v. Ganschow* (1975) 14 Cal.3d 150, 158 [120 Cal.Rptr. 865, 534 P.2d 705].)

Appellant has cited decisions from outside this jurisdiction which have declared similar statutes unconstitutional on equal protection grounds. (*Broome v. Truluck* (1978) 270 S.C. 227 [241 S.E.2d 739].) However, California courts have found a legitimate purpose in the subject statutes. For example, in *Mattingly v. Anthony Industries, Inc.* (1980) 109 Cal.App.3d 506 [167 Cal.Rptr. 292], the court noted: "In enacting Code of Civil Procedure sections 337.1 and 337.15 (a 10-year statute of limitations on latent defects), the Legislature intended to protect contractors against liability extending for a potentially limitless period of time. The California Supreme Court in *Regents of University of California v. Hartford Acc. & Indem. Co.* (1978) 21 Cal.3d 624, 633, at footnote 2 ..., explained: 'A contractor is in the business of constructing improvements and must devote his capital to that end; the need to provide reserves against an uncertain liability extending indefinitely into the future could seriously impinge upon the conduct of his enterprise.'" (*Id.*, at p. 513.)

In rejecting an equal protection challenge to section 337.1, based upon a contention that it discriminated in favor of those persons associated with construction and improvements to real property, while not conferring the same benefits on persons associated with personal property, the court in *Wagner v. State of California, supra*, 86 Cal.App.3d 922, stated: "The statutory limitation of section 337.1 precluding liability for a patent defect after a period of four years from the date of substantial completion of an improvement to real property can be said to promote such construction, since it frees those associated with it from the specter of lawsuits in the distant future. Those who fear venturing into such activities will be less deterred when a ceiling is placed on the period for which they can be held liable. The concept of promoting construction tends to harmonize with the public policy favoring the full enjoyment and use of real property. (See Civ. Code, § 711; 5 Powell on Real Property (1977) Promises as to Use, § 673, p. 156.) We conclude that the classification complained of does not result in a denial of equal protection of the law. (*Agricultural Labor Relations Bd. v. Superior Court, supra*, 16 Cal.3d [392] at p. 410 [128 Cal.Rptr. 183, 546 P.2d 687]; *Stanley v. City and County of San Francisco* (1975) 48 Cal. App.3d 575, 580-581 . . . .)" (*Id.*, at pp. 929-930.)

We similarly conclude that the subject statute promotes a recognized legitimate state interest by protecting contractors from uncertain future liability, thereby encouraging construction, and that a rational basis therefore exists for the classifications created by section 337.1 of the Code of Civil Procedure. We affirm the constitutionality of the statute and the ruling of the trial court granting summary judgment in favor of respondent Lam.

Appellant makes several arguments relating to the judgment on the motion for nonsuit which dismissed the action against the Pons. Appellant first complains that the trial court erroneously excluded Labor Code violations—embodied in sections 7325-7327 and 7330, which require safety devices on multistory buildings to protect window washers—which appellant attempted to introduce for the purpose of establishing respondents' breach of statutory duties of care. The trial court ruled that section 6304.5 of the Labor Code prohibited consideration of these provisions for the purpose of imposing a statutory duty of care upon a nonemployer.

Section 6304.5 provides: "It is the intent of the Legislature that the provisions of this division shall only be applicable to proceedings against

employers brought pursuant to the provisions of chapters 3 (commencing with § 6500) and 4 (commencing with Section 6600) of Part I of this division for the exclusive purpose of maintaining and enforcing employee safety. [¶] Neither this division nor any part of this division shall have any application to, nor be considered in, nor be admissible into, evidence in any personal injury or wrongful death action arising after the operative date of this action, except as between an employee and his own employer."

The pertinent code sections provide as follows:

Section 7326. "There shall be securely attached to the outside window sills or frames of the window of any building, rings, bolts, lugs, fittings or other devices to which may be fastened safety belts or other devices to be used, or which may hereafter be used by persons engaged in cleaning windows. The division shall, prior to the installation of any such bolts, lugs, rings, fittings, or other devices, approve such bolts, lugs, rings, fittings, or other devices as to their design, durability, and safety. Except as provided in Section 18930 of the Health and Safety Code, the division shall by appropriate rules and orders designate the manner in which said safety devices are to be attached, installed and used."

Section 7327. "In lieu of the safety devices enumerated in Section 7326, the division may approve the installation or use of any other devices or means which will effectively safeguard persons engaged in cleaning windows."

Section 7330. "Every person who fails to provide the safety devices as set forth in this chapter upon any building hereafter to be constructed, and who thereafter fails to maintain such devices in good condition, shall be guilty of a misdemeanor."

Section 7325 defines "building" to include the kind of apartment house owned by the Pons.

The language of section 6304.5 is abundantly clear; the provisions of division 5 of the Labor Code—which include the statute appellant sought to have admitted into evidence—are not admissible in any third party actions by an employee. (*Spencer* v. *G. A. MacDonald Constr. Co.* (1976) 63 Cal.App.3d 836, 857 [134 Cal.Rptr. 78].) Appellant, however, seeks to avoid application of section 6304.5 here by arguing

that it should be strictly construed, and given no effect in situations where division 5 imposes affirmative statutory duties upon persons other than employees. We find no support for appellant's suggested construction of section 6304.5 in either the clear language or obvious intent of the statute. The exclusion of the enumerated Labor Code provisions in third-party cases is all-encompassing; no exceptions are stated. We therefore conclude that the trial court did not err in refusing to admit the Labor Code statutes offered by appellant. (*Rodriguez* v. *McDonnell Douglas Corp., supra,* 87 Cal.App.3d 626, 651, fn. 14; *Brock* v. *State of California* (1978) 81 Cal.App.3d 752, 757 [146 Cal.Rptr. 716]; *Arbaugh* v. *Proctor & Gamble Mfg. Co.* (1978) 80 Cal.App.3d 500, 511 [145 Cal.Rptr. 608]; *Spencer* v. *G. A. MacDonald Constr. Co., supra,* 63 Cal.App.3d 836, 857.)

Appellant further challenges section 6304.5 by arguing that as applied by the trial court it is unconstitutional as violative of appellant's rights to due process and equal protection. It is appellant's position that the statute immunizes "proven wrongdoers" from liability, and creates an arbitrary classification between workers and other occupants or visitors of premises.

We note that a similar argument was made and rejected in *Spencer* v. *G.A. MacDonald Constr. Co., supra,* 63 Cal.App.3d 836, where the court explained: "In the absence of a fundamental interest or a suspect classification, the test used in determining the constitutionality of a statute is whether it bears a rational relationship to a state interest. "'. . . A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.'" [Citations.]' (*Brown* v. *Merlo,* 8 Cal.3d 855, 861 . . . .)" (*Id.,* at p. 854.) We are of the opinion that section 6304.5 does bear a rational relationship to a reasonable state interest. We agree with the ruling in *Spencer* and adopt it here.[3]

■ Appellant next argues that he should have been permitted to introduce certain provisions of the Uniform Building Code which had been incorporated into the 1968 City of Oakland Building Code. The version of the municipal code which appellant submitted to the court was adopted July 11, 1968, and effective August 10, 1968.

---

[3]We further note that in *Griesel* v. *Dart Industries, Inc.* (1979) 23 Cal.3d 578, 588 [153 Cal.Rptr. 213, 591 P.2d 503], our high court specifically approved of the resolution of the equal protection argument by the court in *Spencer.*

One of the pertinent sections of the code which appellant sought to admit was section 104(h), which provides: "Maintenance. All buildings and structures, both existing and new, and all parts thereof, shall be maintained in a safe and sanitary condition. All devices or safeguards which are required by this Code in a building or structure when erected, altered, or repaired shall be maintained in a good working order. The owner or his designated agent shall be responsible for the maintenance of the buildings and structures."

Appellant also referred to section 301(d) of the 1968 code, which directed that information in the plans and specifications presented to the city must show in detail "that it will conform to the provisions of this Code and all relevant laws, ordinances, rules and regulations."

Finally, appellant cited to the trial court section 6 of the code, which provided, in pertinent part: "It shall be unlawful for any person, firm, or corporation to erect, construct, enlarge, alter, repair, move, improve, remove, convert, or demolish, equip, use, occupy or maintain any building or structure in the city or cause the same to be done contrary to or in violation of any provision of this Code. . . ."

The evidence was excluded by the trial court for two reasons, one of which was that the 1968 Oakland Building Code was irrelevant because he permit for the Pons' building was issued on April 26, 1968, prior to its effective date, even though the building was not completed until 1969. In so ruling, the court relied, at least partially, upon section 104(g) of the 1968 Oakland Building Code, which stated: "Buildings in existence at the time of the passage of this Code may have their existing use  continued, if such use and occupancy was legal at the time of the passage of this Code, provided such continued use is not dangerous to life. . . ."

It is well established that statutes not in effect at the time of an accident have no relevance to a defendant's statutory duty of care. (See *Akins* v. *County of Sonoma* (1967) 67 Cal.2d 185, 194 [60 Cal.Rptr. 499, 430 P.2d 57]; *Zellers* v. *State of California* (1955) 134 Cal. App.2d 270, 276 [285 P.2d 962].) Section 301(d) of the Oakland Building Code merely requires submittal of plans which conform to the law. Since the plans for the Pons' building were submitted and approved prior to the effective date of the 1968 version of the building code, we conclude that the trial court correctly ruled that section 301(d) has no relevance in this action. (*Akins* v. *County of Sonoma, supra*, 67 Cal.2d

185; *Beeks* v. *Joseph Magnin Co.* (1961) 194 Cal.App.2d 73, 79-80 [14 Cal.Rptr. 877].)

We find no merit in appellant's claim that the trial court should have taken judicial notice of the provisions of the Oakland Building Code in effect prior to 1968, including any predecessor of section 301(d). While a court *may* take judicial notice of municipal ordinances pursuant to section 452, subdivision (b),[4] of the Evidence Code, and *must* do so if requested by a party, provided sufficient notice is given to adverse parties and the court is given sufficient information to enable it to take judicial notice of the matter (Evid. Code, § 453)[5] (*Clark* v. *Patterson* (1977) 68 Cal.App.3d 329, 334, fn. 5 [137 Cal.Rptr. 275]; *McMaster* v. *City of Santa Rosa* (1972) 27 Cal.App.3d 598, 602, fn. 3 [103 Cal.Rptr. 79]), here appellant failed to provide the court with the pre-1968 ordinances which he sought to have judicially noticed. For that reason, the trial court was neither required to take judicial notice of such municipal code sections nor to admit them into evidence. (*People* v. *Maxwell* (1978) 78 Cal.App.3d 124, 130-131 [144 Cal.Rptr. 95]; *Martin* v. *City of Corning* (1972) 25 Cal.App.3d 165, 168, fn. 1 [101 Cal.Rptr. 678]; *Selby Realty Co.* v. *O'Bannon* (1969) 2 Cal.App.3d 917, 920, fn. 2 [82 Cal.Rptr. 807]; *Grant* v. *Hipsher* (1967) 257 Cal. App.2d 375, 380 [64 Cal.Rptr. 892].)

■ Appellant argues that exclusion of sections 6 and 104(h) of the Oakland Building Code was prejudicial error. We agree with appellant that these sections were not made inadmissible on the ground asserted by respondent—and accepted by the trial court—that they attempted to incorporate the requirements of division 5 of the Labor Code in contravention of section 6304.5. The ordinances merely require maintenance of a "safe building." No reference is made in them to the Labor Code, and given the broad prohibition of section 6304.5 none could be made.[6]

---

[4]Section 452, subdivision (b), provides that judicial notice "may be taken of ... [r]egulations and legislative enactments issued by or under the authority of the United States or any public entity of the United States."

[5]Municipal ordinances must be distinguished from "the provisions of any charter," which are subject to mandatory judicial notice under Evidence Code section 451, subdivision (a). (*City of Oakland* v. *Workmen's Comp. App. Bd.* (1969) 271 Cal.App.2d 555, 556 [76 Cal.Rptr. 886].)

[6]Of course, section 6304.5 provides an independent ground for the trial court's exclusion of section 301(d) of the Oakland Building Code, at least, as argued by appellant at trial, to the extent that it seeks to mandate compliance with Labor Code sections 7325-7332 by providing that work must conform to "all relevant laws, ordinances, rules

(*Spencer v. G. A. MacDonald Constr. Co., supra*, 63 Cal.App.3d 836, 857-858.) However, although it was error to exclude sections 6 and 104(h) of the Oakland Building Code for the reasons given by the trial court, the error was not prejudicial.

Appellant argues that these ordinances impose a statutory duty of care making the doctrine of negligence per se applicable here. We disagree.

■ Evidence Code section 669 creates a presumption of negligence from the violation of a statute or ordinance. There are four "basic facts" which must be shown for this presumption to apply: (1) the violation; (2) the violation as a proximate cause of the injury; (3) an injury resulting from an occurrence of the nature which the statute was designed to prevent; and ■ the injured party being a member of the class of persons for whose protection the statute was adopted. (*Rodriguez v. McDonnell Douglas Corp., supra*, 87 Cal.App.3d 626, 651.)

■ The subject ordinances, in our view, are directed at upkeep of existing safety devices and maintenance of the condition of a building; they do not impose design requirements, and do not expand the scope of the landowners' common law duty to invitees. Section 104(h), for example, requires a landowner to maintain a structure in "good working order." That requirement is not violated by the failure of the Pons to *install* hooks or other safety devices; the focus of the ordinance is upon maintenance, not improvement. Since no showing of unsatisfactory *maintenance* of the building has been made by appellant, we conclude that a requisite element of negligence per se—the statutory violation—has not been established.

■ Appellant next argues that the trial court failed to properly apply the "peculiar risk" doctrine, and for that reason erroneously granted the Pons' motion for nonsuit. Appellant insists that high elevation window washing constitutes a peculiar risk of harm and imposes upon a landowner a nondelegable duty to protect against that risk.

---

and regulations .... " Such an indirect reference to the provisions of the Labor Code to establish a statutory duty of care in third party cases would contravene the broad prohibitions of section 6304.5, which states: "Neither this division nor any part of this division shall have any *application to, nor be considered in,* nor be admissible into, evidence in a personal injury ... action .... " (Italics added. See *Spencer v. G. A. MacDonald Constr. Co., supra*, at p. 857.)

█ Initially, we note the scope of our review in this case. "Although the judgment of nonsuit is an adjudication upon the merits it is not treated on appeal like most appeals when it is the duty of the appellate court to indulge every reasonable intendment in favor of sustaining the trial court." (*Van Zyl* v. *Spiegelberg* (1969) 2 Cal.App.3d 367, 371-372 [82 Cal.Rptr. 689].) The appropriate standard of appellate review to be employed was stated in *Pike* v. *Frank G. Hough Co.* (1970) 2 Cal.3d 465 [85 Cal.Rptr. 629, 467 P.2d 229], as follows: "As we have consistently pointed out, a 'nonsuit in a jury case or a directed verdict may be granted only when disregarding conflicting evidence, giving to the plaintiffs' evidence all the value to which it is legally entitled, and indulging every legitimate inference which may be drawn from the evidence in plaintiffs' favor, it can be said that there is no evidence to support a jury verdict in their favor.' (*Elmore* v. *American Motors Corp.* (1969) 70 Cal.2d 578, 583 ....)" (*Id.*, at p. 469; see also *Kane* v. *Hartford Accident & Indemnity Co.* (1979) 98 Cal.App.3d 350, 354 [159 Cal.Rptr. 446].) █ Thus, we are here required to determine whether the trial court was correct in ruling that, as a matter of law, appellant's evidence does not support a cause of action for negligence, in light of the peculiar risk doctrine. (*American Employer's Ins. Co.* v. *Smith* (1980) 105 Cal.App.3d 94, 98 [163 Cal.Rptr. 649].)

*Aceves* v. *Regal Pale Brewing Co.* (1979) 24 Cal.3d 502 [156 Cal.Rptr. 41, 595 P.2d 619], is the most recent expression of the California Supreme Court on the peculiar risk rule. The court summarized the pertinent principles as follows: "The applicable law on the peculiar risk doctrine is stated in sections 413 and 416 of the Restatement Second of Torts. (See *Woolen* v. *Aerojet General Corp.* (1962) 57 Cal.2d 407 ... ; *Ferrel* v. *Safway Steel Scaffolds* (1962) 57 Cal.2d 651 ... ; *Van Arsdale* v. *Hollinger, supra,* 68 Cal.2d [245] at p. 254 [66 Cal.Rptr. 20, 437 P.2d 508].) Section 416 states that 'One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.' Section 413 differs from section 416 only to the extent that it imposes direct liability on the employer when he has made no provision in the contract or otherwise for the taking of required precautions. (*Griesel* v. *Dart Industries, Inc., supra,* 23 Cal.3d at pp. 585-586; Rest.2d Torts, § 416, com. c.) [¶] 'A peculiar risk is a risk which is peculiar to the

work to be done and arises out of its character or the place where it is to be done, and against which a reasonable person would recognize the necessity of taking special precautions.' (*Griesel* v. *Dart Industries, supra*, 23 Cal.3d at p. 586; Rest.2d Torts, §§ 413, com. b., 416, com. b.) It is something other than the ordinary and customary dangers which may arise in the course of the work or of normal human activity. '"Peculiar" does not mean that the risk must be one which is abnormal to the type of work done, or that it must be an abnormally great risk. It has reference only to a special, recognizable danger arising out of the work itself.' (Rest.2d Torts, § 413, com. b.) [Footnotes omitted.]" (*Id.*, at pp. 508-509.)

Further defining the concept of "peculiar risk," the court in *Stark* v. *Weeks Real Estate* (1979) 94 Cal.App.3d 965 [156 Cal.Rptr. 701] declared: "'While it is not essential that the work which the contractor is employed to do be in itself an extra hazardous or abnormally dangerous activity, or that it involves a high degree of risk to those in the immediate vicinity, it must involve some special hazard resulting from the nature of the work done which in turn calls for special precautions.' The Restatement further refines the application of the doctrine by removing from its ambit certain routine types of negligent conduct. Comment b of Restatement Second of Torts, section 413, states in part: 'b. *Peculiar risk and special precautions.* It is obvious that an employer of an independent contractor may always anticipate that if the contractor is in any way negligent toward third persons, some harm to such persons may result. Thus one who hires a trucker to transport his goods must, as a reasonable man, always realize that if the truck is driven at an excessive speed, or with defective brakes, some collision or other harm to persons on the highway is likely to occur. This Section has no reference to such a general anticipation of the possibility that the contractor may in some way be negligent. It is not concerned with the taking of routine precautions, of a kind which any careful contractor could reasonably be expected to take, against all of the ordinary and customary dangers which may arise in the course of the contemplated work. Such precautions are the responsibility of the contractor; and if the employer has exercised reasonable care to employ a contractor who is competent and careful (see § 411), he is not required to provide, in the contract or otherwise, that the contractor shall take them.' Comment d of Restatement Second of Torts, section 416, states that: 'A "peculiar risk" is a risk differing from the common risks to which persons in general are commonly subjected by the ordinary forms of negligence which are usual in the community. It must involve some special hazard resulting from the

nature of the work done, which calls for special precautions. (See § 413, Comment *b*.) Thus if a contractor is employed to transport the employer's goods by truck over the public highway, the employer is not liable for the contractor's failure to inspect the brakes on his truck, or for his driving in excess of the speed limit, because the risk is in no way a peculiar one, and only an ordinary precaution is called for. But if the contractor is employed to transport giant logs weighing several tons over the highway, the employer will be subject to liability for the contractor's failure to take special precautions to anchor them on his trucks.'" (*Id.*, at pp. 971-972.)

The concept of "peculiar risk" contemplates merely a recognizable or identifiable risk associated with a particular kind of activity; it does not refer to an inherently dangerous activity. In *Aceves* v. *Regal Pale Brewing Co., supra*, the court noted that the term "peculiar risk" was not really as appropriate as "special risk," since the latter term more aptly describes the inquiry involved. (24 Cal.3d 502, at p. 509, fn. 2.)

It has also been held that whether the work is likely to create a peculiar risk of harm during its progress unless special precautions are taken is ordinarily a question of fact to be resolved by the trier of fact. (*Mackey* v. *Campbell Construction Co.* (1980) 101 Cal.App.3d 774, 785 [161 Cal.Rptr. 64]; *Walker* v. *Capistrano Saddle Club* (1970) 12 Cal.App.3d 894, 899 [90 Cal.Rptr. 912].)

We acknowledge certain special and identifiable risks associated with washing windows on tall buildings. Among these are the danger that window washers not adequately protected by means of safety devices or adequate attaching mechanisms would fall while working. However, such "peculiar risks" do not include the dangers associated with the negligence of a fellow worker in removing the window washer's means of attachment to the building. A risk of this sort cannot be reasonably foreseen by the landowner, and is outside the scope of those dangers intimately associated with window washing. It is collateral to the risks that normally arise out of that activity.

"Liability under the peculiar risk doctrine does not extend to socalled 'collateral' or 'casual' negligence on the part of the contractor or his employees. (*Van Arsdale* v. *Hollinger, supra*, 68 Cal.2d at p. 252.) 'Casual' or 'collateral' negligence has sometimes been described as negligence in the operative detail of the work, as distinguished from the general plan or method to be followed. Although this distinction can

frequently be made, since negligence in the operative details will often not be within the contemplation of the employer when the contract is made, the distinction is not essentially one between operative detail and general method. 'It is rather one of negligence which is unusual or abnormal, or foreign to the normal or contemplated risks of doing the work, as distinguished from negligence which creates only the normal or contemplated risk.' (Rest.2d Torts, § 426, com. a; see Prosser, Law of Torts, 4th ed. (1971) pp. 474-475.)'" (*Aceves* v. *Regal Pale Brewing Co., supra*, 24 Cal.3d 502, 510; *Stark* v. *Weeks Real Estate, supra*, 94 Cal.App.3d 965, 973.)

A peculiar risk may arise out of a contemplated and unsafe method of work adopted by the independent contractor (*Mackey* v. *Campbell Construction Co., supra*, 101 Cal.App.3d 774, 785-786; *Gettemy* v. *Star House Movers* (1964) 225 Cal.App.2d 636, 643-645 [37 Cal.Rptr. 441]), and had the sand-filled bucket tipped over, releasing the anchor for the ladder, we could easily find that the work method was unsafe and the risk "peculiar." Instead, as earlier observed, the accident resulted from the grossly negligent act of a coworker, an act which we think the Pons could not reasonably have foreseen.

Appellate decisions have repeatedly held under such circumstances that the negligence of employees carrying out procedures or "operative details" of an employment activity constitutes "collateral" or "casual" negligence, rather than a "peculiar" or contemplated risk inherent in the particular work being performed. (See *Stark* v. *Weeks Real Estate, supra*, 94 Cal.App.3d 965, 972-973, worker injured when he fell against the blade of a "skill-saw" which had been wired so that the guard was left open; *Smith* v. *Lucky Stores* (1976) 61 Cal.App.3d 826, 829-830 [132 Cal.Rptr. 628], plaintiff injured when an independent contractor's employee, after lowering a store sign to the ground by means of a crane, released his hold on the sign allowing the wind to blow it onto plaintiff; *Anderson* v. *Chancellor Western Oil Dev. Corp.* (1975) 53 Cal.App.3d 235, 243-244 [125 Cal.Rptr. 640], worker injured when a "stabbing board" on a scaffold which had not been properly secured broke loose and fell on him; *Addison* v. *Susanville Lumber, Inc.* (1975) 47 Cal.App.3d 394, 402 [120 Cal.Rptr. 737], employee killed when he incorrectly felled a tree while involved in the construction of a logging road.)

We find *Elder* v. *Pacific Tel. & Tel. Co.* (1977) 66 Cal.App.3d 650 [136 Cal.Rptr. 203], in which plaintiffs, employees of a subcontractor,

were injured during the removal of an exterior fire escape platform at a second story level, particularly persuasive here. The platform, and both plaintiffs, had fallen to the ground when one of them, departing from the demolition plan and assuming that a steel U-beam surrounding the concrete slab was sufficient to support it, cut the last of the supporting rods before a skiploader was moved into position to take the weight. A trial court's order granting a motion for nonsuit made by defendant at the close of plaintiffs' case on liability was there affirmed. The court concluded, "In view of the *Addison* case, and the policy behind the peculiar risk doctrine we cannot here shift the blame to the employer, general-contractor, by characterizing this case as one in which injury resulted from the failure of the employer to take special precautions against a special, recognizable danger. It may be conceded that the instant injury may have been averted if the general contractor had provided plaintiffs with safety harnesses. Yet the demolition plan as conceived by both the general contractor and its subcontractor certainly negated the general danger that the fire escape landing might come down while workers were still on it, and it was only plaintiffs' careless deviation from this plan which caused their injuries. We therefore hold, as a matter of law, that section 416 of the Restatement Second of Torts has no application to the case at bench." (*Id.*, at pp. 660-661.)

Similarly, we conclude in the present case that the harm to appellant was caused by the "collateral negligence" of his fellow employee, thereby rendering the "peculiar risk doctrine" inapplicable. (*Stark* v. *Weeks Real Estate, supra*, 94 Cal.App.3d 965, 973; *Elder* v. *Pacific Tel. & Tel. Co., supra*, 66 Cal.App.3d 650, 661.) We accordingly hold that the trial court properly concluded, as a matter of law, that the Pons were not liable to appellant either under that theory or their common law duty as landowners.

The judgment is affirmed.

Elkington, Acting P. J., and Grodin, J., concurred.

A petition for a rehearing was denied October 30, 1981, and appellant's petition for a hearing by the Supreme Court was denied December 9, 1981.